# THE JASON.[1]

## ON CERTIFICATE FROM THE UNITED STATES CIRCUIT COURT OF APPEALS FOR THE SECOND CIRCUIT.

No. 220. Argued April 18, 1912.—Decided May 13, 1912.

A general average agreement inserted in bills of lading, providing that if the owner of the ship shall have exercised due diligence to make the ship in all respects seaworthy and properly manned, equipped and supplied, the cargo shall contribute in general average with the shipowner even if the loss resulted from negligence in the navigation of the ship, is valid under the Harter Act, and entitles the shipowner to collect a general average contribution from the cargo-owners in respect to sacrifices made and extraordinary expenditures incurred by him for the common benefit and safety of ship, cargo and freight subsequent to a negligent stranding.

Under § 3 of the Harter Act, the cargo-owners under the same circumstances have a right of contribution from the shipowner for sacrifices of cargo made subsequent to the stranding for the common benefit and safety of ship, cargo and freight.

Under the same circumstances the cargo-owners cannot recover contribution from the shipowner in respect of general average sacrifices of cargo, without contributing to the general average sacrifices and expenditures of the shipowners made for the same purpose.

The essence of general average contribution is that extraordinary sacrifices made and expenses incurred for the common benefit are to be borne proportionately by all who are interested.

*The Irrawaddy*, 171 U. S. 187, distinguished.

Questions certified in case reported in 162 Fed. Rep. 56, and 178 Fed. Rep. 414, answered.

CROSS libels were filed in the United States District Court for the Southern District of New York between the owner of the steamship *Jason* and the firm of Arbuckle Brothers, owners, and the Insurance Company of North

---

[1] The docket title of the case is Actieselskabet "Jason" *v.* John Arbuckle et al.

America, insurers, of part of that vessel's cargo, to recover general average contributions. The District Court dismissed both libels. 162 Fed. Rep. 56. Upon appeal the Circuit Court of Appeals at first filed an opinion for affirmance (178 Fed. Rep. 414), but afterwards granted a rehearing, as a result of which the questions of law at issue were certified to this court as follows:

*"Statement of Facts.*

"The facts upon which the questions arise are these:

"On July 30, 1904, the Norwegian Steamship *Jason* while bound on a voyage from Cienfuegos, Cuba, to New York, with general cargo, including 12,000 bags of sugar, consigned to Arbuckle Brothers, and insured with the Insurance Company of North America, stranded off the south coast of Cuba, through the negligence of her navigators. The steamship was seaworthy and was properly manned, equipped and supplied.

"The vessel was relieved from the strand on August 9 as the result of sacrifices by jettison of 2,042 bags of sugar (1,657 bags being the property of Arbuckle Brothers), of sacrifices and extraordinary expenditures voluntarily made or incurred by the shipowner through the master, and of the services of salvors specially employed. Said sacrifices and expenditures were necessary to relieve ship, cargo and freight from common peril. She then completed her voyage, and made delivery of the remainder of her cargo to the several consignees at New York on their executing an average bond for the payment of losses and expenses which should appear to be due from them, provided they were stated and apportioned by the adjusters 'in accordance with established usages and laws in similar cases.'

"The bills of lading for all of the *Jason's* cargo contained the following provision:

" 'General average payable according to York-Antwerp

VOL. CCXXV—3

Rules, and as to matters not therein provided for according to usages of port of New York.

" 'If the owner of the ship shall have exercised due diligence to make said ship in all respects seaworthy and properly manned, equipped and supplied, it is hereby agreed that in case of danger, damage or disaster resulting from fault or negligence of the pilot, master or crew, in the navigation or management of the ship, or from latent or other defects, or unseaworthiness of the ship, whether existing at time of shipment or at beginning of the voyage, but not discoverable by due diligence, the consignees or owners of the cargo shall not be exempted from liability for contribution in General Average, or for any special charges incurred, but with the shipowner shall contribute in General Average, and shall pay such special charges, as if such danger, damage or disaster had not resulted from such fault, negligence, latent or other defect or unseaworthiness.'

"Both parties pleaded the bills of lading as constituting the contract of carriage.

"A general average adjustment was afterwards made in New York by Johnson & Higgins, adjusters appointed in the average bond. Both parties presented their claims to the adjusters for sacrifices made by them respectively for the common benefit and safety of the adventure. The adjusters allowed in the General Average account the compensation of the salvors, the sacrifices of cargo, and the sacrifices and extraordinary expenditures of the shipowner, and each of the interests was credited with such amounts as had been paid by it for the common benefit.

"The adjustment was prepared in accordance with York-Antwerp Rules, as provided for in the bill of lading, and otherwise in accordance with established usages and laws.

"The adjustment and apportionment of General Average, so made, showed a balance due from Arbuckle

Brothers of $5,060.24, which the latter refused to pay. The grounds of such refusal were that the stranding resulted from the ship's negligence, and that the general average clause, above quoted, contained in the bills of lading is invalid.

"The original libel was filed by the owner of the *Jason* against Arbuckle Brothers and its guarantor, the Insurance Company of North America, to recover this amount.

"Arbuckle Brothers and the Insurance Company of North America filed a cross libel to recover the sum of $3,506.50, which they alleged would be due them on an adjustment of the general average losses, if the shipowner's losses and sacrifices were excluded from the General Average account by reason of the fact that the stranding was caused by negligence of the ship's navigators. They claimed that the shipowner's sacrifices and extraordinary expenditures, made for the common benefit and safety of the adventure after the stranding, should not be allowed in the adjustment. If said sacrifices and expenditures should be excluded from the adjustment and the value of the ship should be taken account of as a contributory interest, the adjustment would show a balance in favor of Arbuckle Brothers.

"The District Court made a decree dismissing both libels, from which decree both parties duly appealed to this Court.

*" Questions Certified.*

"Upon the facts above set forth the questions of law concerning which this Court desires the instruction of the Supreme Court are:

"1. Whether the general average agreement above quoted from the bills of lading is valid, and entitles the shipowner to collect a general average contribution from the cargo owners, under the circumstances above stated, in respect of sacrifices made and extraordinary expendi-

tures incurred by it subsequent to the stranding for the common benefit and safety of ship, cargo and freight.

"2. Whether, in view of the provisions of the third section of the Harter Act the cargo owners, under the circumstances above stated, have a right to contribution from the shipowner for sacrifices of cargo made subsequent to the stranding, for the common benefit and safety of ship, cargo and freight?

"3. Whether the cargo owners, under the circumstances above stated, can recover contribution from the shipowner in respect of general average sacrifices of cargo, without contributing to the general average sacrifices and expenditures of the shipowner made for the same purpose.

"In accordance with the provisions of Section 6 of the Act of March 31, 1891, establishing courts of appeals, the foregoing questions of law are by the Circuit Court of Appeals of the United States for the Second Circuit, hereby certified to the Supreme Court."

*Mr. J. Parker Kirlin*, with whom *Mr. Charles C. Burlingham* was on the brief, for The Jason:

The facts present a case of general average within the meaning of the clause in the bill of lading.

All loss which arises in consequence of extraordinary sacrifices made, or expenses incurred for the preservation of the ship and cargo, comes within general average, and must be borne proportionably by all who are interested. *Birkley* v. *Presgrave*, 1 East, 220; *Columbian Ins. Co.* v. *Ashby*, 13 Pet. 331; *McAndrews* v. *Thatcher*, 3 Wall. 348; *The Star of Hope*, 9 Wall. 203; Lowndes, 5th ed., p. 25.

The case was one of general average, whether the shipowner's sacrifices should receive contribution or not. It would have been a case of general average even if there had been but one interest to contribute. *Montgomery* v. *Indemnity Marine Ins. Co.* (1901), 1 Q. B. 147; (1902), 1 K. B. 734; *Potter* v. *Ocean Ins. Co.*, 3 Sumn. 27; *Risley* v.

*Ins. Co. of N. A.*, 189 Fed. Rep. 529. The owners of the cargo, in any event, would have been entitled to contribution from one another. *Strang* v. *Scott*, 14 App. Cas. 601, 609, 610; *The City of Para*, 69 Fed. Rep. 414; 74 Fed. Rep. 565, 567. The owners of cargo would also be entitled, notwithstanding the fault of the shipowner, to demand a contribution from him, subject to the reciprocal right of the shipowner to receive contribution in respect of his losses and sacrifices from them. *The Strathdon*, 94 Fed. Rep. 206; 101 Fed. Rep. 600.

The case being one of general average, the general average clause in the bills of lading makes the shipowner's sacrifices and extraordinary expenses proper subjects of contribution in an affirmative suit against the owners of cargo. *Ralli* v. *Troop*, 157 U. S. 386, 393; *The Bona* (1905), Probate, 125; *McAndrews* v. *Thatcher*, 3 Wall. 348, 366; *The Star of Hope*, 9 Wall. 203; Lowndes, Law of General Average, 5th ed. (1912), § 37, p. 172.

The only substantial question in dispute is whether the shipowner, by force of the general average clause in the contract, can have his sacrifices and extraordinary expenses brought into the adjustment for contribution.

The answer to the first question is not controlled by the decision of this court in the case of *The Irrawaddy*, 171 U. S. 187. In this case the bill of lading contained a clause closely following the language of § 3 of the Harter Act of Feb. 13, 1893, c. 105, 27 Stat. 445. There was no such clause in "*The Irrawaddy.*"

The question of the right of the parties to contract for a contribution in general average, in a case of negligent stranding, was not in issue, does not appear from the briefs to have been argued, and, therefore, cannot properly be considered to have been decided by anything that the court may have said in the course of its opinion.

The court expressly decided that the Harter Act does modify the public policy as previously declared by the

courts, which theretofore had refused to permit a carrier to exempt himself from the consequences of the negligence of his servants, in the performance of the essential duties of his employment.

To that extent, therefore, the public policy of the country and the rights and duties of shipper and carrier were held to be modified and changed by the Harter Act.

Whether this modification of public policy and of the shipowners' duty and liability by statute does not pave the way for a lawful contract that losses arising from sacrifices made by the master, in his quality of agent, in emergency, for all concerned, shall be apportioned in general average over all the interests benefited by the sacrifices, was not decided and that question is now, for the first time, presented for decision.

The first question certified should be answered in the affirmative.

The general average provisions contained in the bills of lading constitute a lawful contract mutually binding on the owners of the cargo and of the ship.

The general average clause does not purport to relieve the carrier from the performance of any duty that he owed to the cargo. It deals only with sacrifices voluntarily made, and with extraordinary expenses voluntarily incurred for the common safety.

As to the history of the York-Antwerp Rules of General Average, see App. Y 5th ed., Lowndes on General Average, pp. 788–798.

Where these rules are adopted in a contract of carriage, as in this case, they are held to relate "to the subjects of contribution in general average." *Ralli* v. *Troop,* 157 U. S. 386, 412; *Magdala S. S. Co.* v. *Baars,* 101 Fed. Rep. 303; *The Santa Ana,* 154 Fed. Rep. 800; *Greenshields* v. *Stephens* (1908), 1 K. B. 51; (1908), A. C. 431.

Such contribution shall be payable in accordance with the rules, as a legal right, unless the person asked to con-

tribute can show that the claimant is debarred from such right by an actionable wrong on his own part which occasioned the sacrifice. *Stewart* v. *West India S. S. Co.*, L. R., 8 Q. B., 88, 95; affirmed, *Id.*, 362, 363; *Harris* v. *Scaramanga*, L. R., 7 C. P., 481, 488, 489; *Greenshields* v. *Stephens, supra; De Hart* v. *Campania &c.*, 8 Com. Cas. 42, 314; *The Santa Ana*, 154 Fed. Rep. 800; *Anglo-Argentine Agency* v. *Temperley* (1899), 2 Q. B. 403, 408, 412–413; *The Rossija*, 21 R. I. D. M. 215.

It is implied in every contract for the carriage of goods from or to a port in the United States that the shipment is to be carried and delivered subject to the terms and provisions of the Harter Act. *The Silvia*, 171 U. S. 462. It is also implied that the parties will mutually contribute to any general average loss that may arise or happen during the voyage. *Burton* v. *English*, 12 Q. B. D. 218, 223; *Ralli* v. *Troop*, 157 U. S. 396–397; *Anderson* v. *Ocean S. S. Co.*, 10 App. Cas. 107, 112, 115.

The rights, duties and liabilities are not any different where the stranding is due to nautical faults, from those which arise when the stranding is due to a sea peril. *Ralli* v. *Troop*, 157 U. S. 386, 397; *The Gratitudine*, 3 C. Rob. 240; *Anglo-Argentine Agency* v. *Temperley* (1899), 2 Q. B. 403; Carver's Carriage by Sea, 5th ed., 1909 (§§ 294–295).

The master in an emergency such as was involved in this case has authority to jettison. *McAndrews* v. *Thatcher*, 3 Wall. 347, 366; *Star of Hope*, 9 Wall. 203, 228.

Damage voluntarily done to the framework or appurtenances of the ship or by extraordinary use of the machinery is also the subject of contribution as a sacrifice. *Birkley* v. *Presgrave*, 1 East, 220; *The Bona* (1895), P. D. 125, 129, 131, 138–141; *Robinson* v. *Price*, 2 Q. B. D. 91; *Int. Nav. Co.* v. *Atlantic Mut. Ins. Co.*, 100 Fed. Rep. 304, 312; *Watson* v. *Ins. Co.*, 7 Johns. 57, 62; *Providence & Stonington S. S. Co.* v. *Phœnix Ins. Co.*, 89 N. Y. 559;

*The Star of Hope,* 9 Wall. 203, 228. *The Yucutan,* 139 Fed. Rep. 894 appears to be unsound in principle.

In *The Ettrick,* 6 P. D. 127, and *Strang* v. *Scott,* 14 App. Cas. 601, there was no contractual exemption, and no statute in those cases, that exonerated the shipowners from the faults of their servants; and see *Greenshields* v. *Stephens* (1908), 1 K. B. 51; *The Enrique,* 7 Fed. Rep. 490; *The Bodo,* 56 Fed. Rep. 980; *The Santa Ana,* 154 Fed. Rep. 800; *DeHart* v. *Campania Anonima Seguros Aurora,* 8 Commercial Cases, 42 and 314; *Harris* v. *Scaramanga,* L. R., 7 C. P., 481.

The general average clause is not contrary to public policy as defined by this court. *Railroad Co.* v. *Lockwood,* 17 Wall. 357; *The Montana,* 129 U. S. 397, distinguished; and see *The Delaware,* 161 U. S. 459; *The Irrawaddy,* 171 U. S. 187, 193.

Since the Harter Act the general average clause does not contravene public policy. It does not undertake to exempt the shipowner from the performance of any of the essential duties of his employment. He has been absolved from responsibility for the stranding and its consequences by the Harter Act. *Pacific* v. *Honduras,* 69 Fed. Rep. 414; 74 Fed. Rep. 504.

A clause of which the main intent and purpose is not to relieve the carrier from negligence in the performance of his essential duties, may be supported as reasonable and valid, even though its incidental or contingent effect may be to relieve him, in some measure, from the consequences of acts of servants for which, in its absence, he would be responsible. *Hart* v. *Pennsylvania R. R. Co.,* 112 U. S. 331; *Hohl* v. *North German Lloyd,* 175 Fed. Rep. 544; *The Queen of the Pacific (Pacific Coast S. S. Co.* v. *Bancroft-Whitney Co.),* 94 Fed. Rep. 180; 180 U. S. 49; *The Persiana,* 185 Fed. Rep. 396; *Phœnix Ins. Co.* v. *Erie Transp. Co.,* 117 U. S. 312; *Express Co.* v. *Caldwell,* 21 Wall. 264, 268.

Regulation of general average by agreement is permitted by the laws of a great majority of the leading maritime countries. *England—Simonds* v. *White*, 2 B. & C. 805; *DeHart* v. *Campania &c.*, 8 Com. Cas. 314; Lowndes on Gen. Average, 5th ed. 34; *France—*§§ 398, 405, Code of Commerce; *Crowley* v. *Saint Freres*, 10 Revue Internationale du Droit Maritime, 147, cited *The Irrawaddy*, 171 U. S. 199; *Le Normand* v. *La Compagnie &c.*, 1 Dalloz, 471; Valroger, Vol. 5, p. 11; 4 Desjardins, Droit Maritime, pp. 121, 122; 2 Lyon-Caen & Renault, Droit Maritime, pp. 92, 93. *Germany—*Commercial Code of 1900, § 702; Lowndes, 5th ed., p. 521; *Judgment of the Reichs-Gerichte*, 1905, S. S. Rossya; Lowndes, 5th ed., p. 547; 21 Revue Internationale du Droit Maritime, 215. *Belgium—*Arts. 145–148, Code of Commerce of 1908; Lowndes, 5th ed., p. 463; *Navire Llansannor*, 22 Revue Internationale du Droit Maritime, 534; *The Irrawaddy*, 171 U. S. at pp. 200, 201. *Italy—*Arts. 642, 643, Code of Commerce of 1883; Lowndes, 5th ed., p. 597; Lowndes, 5th ed., p. 610, note T; the Court of Appeal of Italy, *Compagnie &c.* v. *De Giovanni*, 21 Revue Internationale du Droit Maritime, 689. *Chili—*Arts. 1086, 1090, Code of 1865; Lowndes, 5th ed., p. 485. *Portugal—*Art. 634, § 2, Code of 1889; Lowndes, 5th ed., p. 639. *Norway—*Lowndes, 5th ed., p. 636. As to other countries, see Lowndes, 5th ed., p. 567.

These conditions are found in the Codes of Greece, 1910, §§ 193, 194, Lowndes, 5th ed., p. 562; *The Argentine Republic*, Code, Articles 1313, 1318, Lowndes, 5th ed., pp. 422, 427; *Brazil*, Code, Articles 762, 765, Lowndes, 5th ed., pp. 478, 479.

The decisions of the highest courts of France, Germany, Belgium and Italy, are identical in principle with those of the English courts that where nautical faults are excepted, contribution is allowed to the shipowners' sacrifices as though he were a stranger to the fault. In this case the clause carries the agreement much further It

makes the claim for contribution to the shipowners' sacrifices, in such a case, the subject of express agreement instead of leaving it to inference or construction.

See Proceedings of the International Law Association, 21st Rep. Antwerp, 1903, p. 231; Carver's Carriage by Sea, 5th ed., p. 980.

As to the impolicy of adopting any general rule which will tend to exempt one class of sacrifices from contribution rather than another, the decisions of this court are in accord with those of Massachusetts and of England. *The Star of Hope,* 9 Wall. 203, 230, citing Emerigon, p. 467; *Marwick* v. *Rogers,* 163 Massachusetts, 50; *Johnson* v. *Chapman,* 19 C. B. N. S. 563, 582; *The Strathdon,* 94 Fed. Rep. 206; 101 Fed. Rep. 600.

The second question, which asks whether, in view of the provisions of § 3 of the Harter Act, and of the general average clause, the cargo-owners have a right to contribution from the shipowner for sacrifices of cargo made subsequent to a negligent stranding in order to save the joint interests from common peril, should be answered in the affirmative. Section 482, Rev. Stat. There is a similar statute in England. *The Roanoke,* 46 Fed. Rep. 297; 53 Fed. Rep. 270; affirmed, 59 Fed. Rep. 161; *The Rapid Transit,* 52 Fed. Rep. 320; *The Santa Ana,* 154 Fed. Rep. 800; *Schmidt* v. *Royal Mail S. S. Co.,* 45 L. J. Q. B. 646; *White Cross Co.* v. *Savill,* 8 Q. B. D. 653; *Greenshields* v. *Stephens* (1908), 1 K. B. 51; affirmed (1908), App. Cas. 431; *Phœnix Ins. Co.* v. *Erie Transportation Co.,* 117 U. S. 312.

It seems impossible to make up an adjustment according to the accepted principles of general average, under the rule stated in the Court of Appeals' opinion.

The third question, which asks whether in view of the general average clause, the cargo-owners, in a case of stranding arising from faulty navigation, can recover contribution from the shipowner in respect of general

average sacrifices of cargo, without contributing to the general average sacrifices and expenditures of the shipowner made for the same purpose, should be answered in the negative. *The Strathdon,* 94 U. S. 206.

Reciprocity of contribution is a fundamental idea in the law of general average. *Birkley* v. *Presgrave,* 1 East, 220, 228; *Svendsen* v. *Wallace,* 13 Q. B. D. 69, at p. 73.

Definitions of general average identical in substance, if not in form, are found in other English decisions. *Robinson* v. *Price,* 2 Q. B. D. 91; *The Bona* (1895), Probate, 125, 129, 131, 138–141; and in the Federal and state courts of this country, *Ins. Co.* v. *Ashby,* 13 Pet. 331, 338; *McAndrews* v. *Thatcher,* 3 Wall. 347, 366; *The Star of Hope,* 9 Wall. 203, 228; *Sturges* v. *Cary,* 2 Curtis, 59 and 382; *Potter* v. *Ocean Ins. Co.,* 3 Sumn. 27; *The Strathdon,* 94 Fed. Rep. 206; *International Navigation Co.* v. *Atlantic Mutual Ins. Co.,* 100 Fed. Rep. 304, 312; *Watson* v. *Ins. Co.,* 7 Johns. (N. Y.) 57, 62; *Providence & Stonington S. S. Co.* v. *Phœnix Ins. Co.,* 89 N. Y. 559; Lowndes on General Average, 5th ed., p. 42.

The doctrine of reciprocity is found in nearly all the continental codes of Europe, substantially in the form in which it is found in the " Ordonnance " of Louis XIV, Tit. 7, Arts. 2 and 3; 4 Pardessus, 380.

The only important exceptions to the doctrine of reciprocity of contribution that have been admitted in practice, in England, or in this country, relate to passengers' baggage and to deck loads; and these exceptions are not based on equitable principles.

Contribution to passengers' baggage has been allowed in this country. Though ordinarily it does not contribute, yet if sacrificed it does contribute. *Heye* v. *North German Lloyd,* 33 Fed. Rep. 60; 36 *id.* 705. There are no decisions on the point in England. See Lowndes, 5th ed., p. 375; Arnould on Insurance, 8th ed., p. 936.

The second important exception relates to deck load.

This, also, is not based on equitable grounds. The exception, indeed, is by no means universal. Contribution to a deck load loss is exacted where it is customary, in particular trades, to carry a deck load. Lowndes, 5th ed., pp. 59, 71, 745; *Brown* v. *Cornwell*, 1 Root (Conn.), 60, decided in 1773; *Johnson* v. *Chapman*, 19 C. B. (N. S.) 563; *Strang* v. *Scott*, 14 App. Cas. at p. 609; *Wright* v. *Marwood*, 7 Q. B. D., 62, 67, 68.

The case of deck-load is, therefore, no authority for the claim that reciprocity of contribution is not an essential condition of general average, and that the shipowner's sacrifices could be denied the right of contribution without violating the fundamental rule of general average. *The Strathdon*, 94 Fed. Rep. 210, 211.

*Mr. Lawrence Kneeland* for the cargo-owners:

The bill of lading clause, to which the first question relates, in so far as it imposes upon the cargo-owner the obligation to contribute in general average to the ship's sacrifices made to save the vessel, freight and cargo from a situation of peril resulting from the negligence of her master and crew, is contrary to public policy and invalid. *N. Y. & Cuba Mail S. S. Co.* v. *Ansonia Clock Co.*, 139 Fed. Rep. 894.

Whether this bill of lading clause is valid or invalid depends upon whether it is one such as the law can recognize as reasonable and not inconsistent with sound public policy. *Express Company* v. *Caldwell*, 21 Wall. 264. See *The Irrawaddy*, 171 U. S. 187.

The limitation of the right to contribution is well settled and established by the English and American authorities. Lowndes on General Average; Gourlie on General Average, p. 15; *The Ontario*, 37 Fed. Rep. 220; *Snow* v. *Perkins*, 39 Fed. Rep. 334; *Schloss* v. *Heriot*, 14 C. B. (N. S.) 59; *The Nicanor*, 44 Fed. Rep. 504, 509; *Strang* v. *Scott*, 14 A. C. 601.

This court has, therefore, declared that, prior to the enactment of the Harter Act, sound public policy forbade the participation by a shipowner in a general average contribution when the danger which necessitated the general average sacrifices was occasioned by the negligence of the shipowner's servants, and that that act has not changed the law in that respect.

The Harter Act confers no right to contract for such right, and indeed confers no right to contract for any exemption. The act itself gives and measures the exemption and no right to contract for any further exemption or privilege exists.

The master of a vessel in a situation of peril occasioned by faulty navigation is bound to exert himself and to exercise his best judgment in rescuing the property which has been imperilled by his neglect.

No obligation whatever rests upon the cargo-owner. *The Nicanor*, 44 Fed. Rep. 504.

The acceptance of a bill of lading containing a contract of waiver is not the voluntary act of the shipper, for he has no real choice. *Liverpool Steam Co.* v. *Phœnix Ins. Co.*, 129 U. S. 441; *The Portsmouth*, 9 Wall. 682, 687.

If the property can be saved only by a sacrifice of some part thereof, it is the master's duty to make such sacrifice, irrespective of any question of contribution thereto.

The decisions of the English courts and of the courts of certain continental countries cited on the brief of counsel for the Jason are based upon a different view from that taken by this court. *The Carron Park*, 15 P. D. 203; *Mary Thomas* (1894), Prob. 104; *Millburn* v. *Jamaica Co.* (1900), 2 Q. B. 540.

Question nevertheless exists as to what decision will be reached by the highest English court upon this question. See *Greenshields* v. *Stephens* (1908), 1 K. B. 51.

The principal controversy in England, at the present time, appears to be whether a mere exception in a bill

of lading has any effect whatever upon contribution in general average. See Mr. Carver's position in Journal of the Society of Comparative Legislation, 1903, Vol. 5, p. 227.

The same difference in view as to public policy is involved in the continental decisions.

The French law, like the English, permits the utmost freedom of contract. *La Normand* v. *Compagnie Gen. Trans.*, 1 Dalloz, 479; Rassija, cited on the brief for the Jason; German Maritime Code, § 702.

As to the decisions of the Belgian and Italian courts, the codes of both countries declare that sacrifices or expenditures occasioned by unseaworthiness of the ship or negligence of the captain or crew or by *vice propre* of the cargo are particular average. Italian Code, §§ 643–646; Belgian Code, § 103.

As to the second question certified, whether the Harter Act is a defense to the cargo-owners' claim for contribution to their general average sacrifices and losses, neither exemptions in a bill of lading nor statutory exemptions from liability relieve a shipowner from contribution to general average sacrifices of cargo. *Schmidt* v. *Royal Mail S. S. Co.*, 45 L. J. Q. B. 646; *Crooks* v. *Allan*, L. R., 5 Q. B. D., 218; *Burton* v. *English*, L. R., 12 Q. B. D., 218; *The Roanoke*, 59 Fed. Rep. 161.

Neither § 4282 of Rev. Stat. nor clauses in the bill of lading providing that the carrier should not be liable for loss or damage arising from fire or wetting, or that the carrier should have the benefit of any insurance on the property, release the carrier from liability to contribute towards general average. *The Santa Ana*, 154 Fed. Rep. 800; *The Wm. J. Quillan*, 175 Fed. Rep. 207.

While in none of the cases did the danger result from negligence, negligence of the carrier's servants cannot affect his liability to contribute. *The Strathdon*, 94 Fed. Rep. 208.

If an innocent shipowner must contribute notwithstanding the statute, *a fortiori* a negligent shipowner must do so. *Strang* v. *Scott*, 14 A. C. 609.

The contention that because the shipowner is not entitled to claim contribution he is not liable to contribute appears to be based upon the fact that ordinarily the right to contribution and the liability to contribute are reciprocal. But see *Heye* v. *North German Lloyds*, 33 Fed. Rep. 64.

The third question certified is: Assuming that the cargo-owner is entitled to recover contribution from the shipowner, is his enforcement of such right conditional upon his contributing to any extent to the losses of the shipowner?

The master of a vessel, stranded as a result of his negligence, may save the common adventure by sacrificing some part of the ship's appliances or making extraordinary use of her engines, or he may jettison cargo, or he may, as in the present case, do both.

If the general average sacrifice is a sacrifice of the vessel alone the shipowner cannot recover contribution thereto from the cargo.

If the property is saved by a jettison of the cargo alone the vessel is bound to contribute to such jettison. *The Strathdon*, 94 Fed. Rep. 210, distinguished, as violating the fundamental principle of the law of general average, that all losses shall be borne equally. Lowndes, Gen. Av., 4th ed., p. 38; Arnould, Mar. Ins., 8th ed., § 974.

The *Strathdon* decision is in error, as it treats the statute as blotting out the fault of the shipowner and placing him in the position of an innocent party. See *The Ettrick*, 6 P. D. 127; *The Hector*, 8 P. D. 218.

The *Strathdon* decision also fails to distinguish between damages caused directly by the negligent navigation and the general average sacrifices of the cargo to avert further loss.

For the distinction between claims for damages by the original disaster and claims for contribution to sacrifices voluntarily made to avoid further loss therefrom, see *The Roanoke*, 59 Fed. Rep. 161, 164; *Pacific Mail S. S. Co.* v. *N. Y. & H. & R. Min. Co.*, 74 Fed. Rep. 568.

Confusion has arisen on this question owing to the failure to recognize that it is the law not only that no one can recover general average contribution if the danger to avert which a sacrifice was made has arisen from the fault of the claimant or his servants, but that those who are innocent can recover contribution from the guilty; that this latter right exists notwithstanding and irrespective of the liability in damages of the negligent shipowner, and that it is only the shipowner's liability in damages which has been affected by the Harter Act. See Lowndes on General Average, 34; *Strang* v. *Scott*, 14 App. Cases, 601; Carver on Carriage by Sea, 5th ed., § 373a; *The Irrawaddy (Crystal* v. *Flint)*, 82 Fed. Rep. 472, 475.

There is no element of unfairness to the shipowner in the contention of the cargo-owners in this case, for the principle we contend for is applicable to every party or interest, whether shipowner or cargo-owner, whose negligence or fault has occasioned the danger which the sacrifice has averted. 2 Parsons' Mar. Ins. 217.

In the absence of an established usage in the particular trade to carry on deck, contribution to the jettison of deck cargo is not allowed, yet if the deck cargo be saved it contributes to the sacrifices of other interests. 3 Kent's Com., 3d ed., p. 240; Phillips on Insurance, § 1396; Maclachlan, Law of Merchant Shipping, 5th ed., p. 766.

MR. JUSTICE PITNEY, after stating the case as above, delivered the opinion of the court.

That the facts present a case of general average within the meaning of the clause embodied in the bills of lading is entirely clear. There was a common, imminent peril

involving ship and cargo, followed by a voluntary and extraordinary sacrifice of property (including extraordinary expenses), necessarily made to avert the peril, and a resulting common benefit to the adventure. *McAndrews* v. *Thatcher*, 3 Wall. 347, 365; *Star of Hope*, 9 Wall. 203, 228; *Ralli* v. *Troop*, 157 U. S. 386, 394.

The principal controversy is upon the question of the validity of the agreement that if the shipowner "shall have exercised due diligence to make said ship in all respects seaworthy, and properly manned, equipped and supplied," then, in case of danger, damage, or disaster resulting from (*inter alia*) negligent navigation, the cargo-owners shall not be exempted from liability for contribution in general average, but with the shipowner shall contribute as if such danger, damage, or disaster had not resulted from negligent navigation. The facts show that the shipowner had fulfilled the condition imposed upon him by this clause; that is, he had "exercised due diligence to make said ship in all respects seaworthy and properly manned, equipped and supplied." The question presented for solution turns upon the effect of the third section of the act of Congress approved February 13, 1893, c. 105, 27 Stat. 445 (U. S. Comp. Stat., 1901, p. 2946), known as the Harter Act, and of the decision of this court in the case of *The Irrawaddy*, 171 U. S. 187.

Prior to the Harter Act it was established that a common carrier by sea could not by any agreement in the bill of lading exempt himself from responding to the owner of cargo for damages arising from the negligence of the master or crew of the vessel. *Liverpool & G. W. Steam Co.* v. *Phenix Ins. Co.*, 129 U. S. 397, 438; following *New York C. Railroad Co.* v. *Lockwood*, 17 Wall. 357.

But of course the responsibilities of the carrier were subject to modification by law, and with respect to vessels transporting merchandise from or between ports of the United States and foreign ports they were substantially

modified by the Harter Act. The first three sections of this enactment are pertinent to the present discussion and are set forth in full in the margin.[1]

Section 1 deals with the shipowner's responsibility for the proper loading, stowage, custody care and delivery of the cargo, prohibits the insertion in any bill of lading of an agreement relieving him from responsibility for negligence in respect to these duties, and declares such agreements null and void. Section 2 prohibits the insertion in any bill of lading of an agreement lessening or avoiding the obligation of the shipowner to "exercise due diligence (to) properly equip, man, provision and outfit said vessel and to make said vessel seaworthy," etc. Section 3 proceeds to limit the responsibility of a shipowner who shall have exercised due diligence to make his vessel seaworthy and properly manned, equipped and supplied. Instead of merely sanctioning covenants and agreements limiting his liability, Congress went further

---

[1] The title and first three sections of the Harter Act are as follows:

"An act relating to navigation of vessels, bills of lading, and to certain obligations, duties, and rights in connection with the carriage of property.

"Be it enacted, etc., That it shall not be lawful for the manager, agent, master, or owner of any vessel transporting merchandise or property from or between ports of the United States and foreign ports to insert in any bill of lading or shipping document any clause, covenant, or agreement whereby it, he, or they shall be relieved from liability for loss or damage arising from negligence, fault, or failure in proper loading, stowage, custody, care, or proper delivery of any and all lawful merchandise or property committed to its or their charge. Any and all words or clauses of such import inserted in bills of lading or shipping receipts shall be null and void and of no effect.

"Sec. 2. That it shall not be lawful for any vessel transporting merchandise or property from or between ports of the United States of America and foreign ports, her owner, master, agent, or manager, to insert in any bill of lading or shipping document any covenant or agreement whereby the obligations of the owner or owners of said vessel to exercise due diligence properly equip, man, provision, and outfit

and rendered such agreements unnecessary by repealing the liability itself, declaring that if the shipowner should exercise due diligence to make the vessel in all respects seaworthy, and properly manned, equipped and supplied, neither the vessel, her owner or owners, etc., should be responsible for damage or loss resulting from faults or errors in navigation or in the management of the vessel, etc., etc. The antithesis is worth noting. Congress says to the shipowner—"In certain respects you shall not be relieved from the responsibilities incident to your public occupation as a common carrier, although the cargo owners agree that you shall be relieved; in certain other respects (provided you fulfill conditions specified) you shall be relieved from responsibility, even without a stipulation from the owners of cargo."

In the case now before us it is argued in behalf of the shipowner that since by the third section of the Harter Act he is absolved from responsibility for the negligence

said vessel, and to make said vessel seaworthy and capable of performing her intended voyage, or whereby the obligations of the master, officers, agents, or servants to carefully handle and stow her cargo and to care for and properly deliver same, shall in any wise be lessened, weakened, or avoided.

"SEC. 3. That if the owner of any vessel transporting merchandise or property to or from any port of the United States of America shall exercise due diligence to make the said vessel in all respects seaworthy and properly manned, equipped, and supplied, neither the vessel, her owner or owners, agent, or charterers shall become or be held responsible for damage or loss resulting from faults or errors in navigation or in the management of said vessel nor shall the vessel, her owner or owners, charterers, agent, or master be held liable for losses arising from dangers of the sea or other navigable waters, acts of God, or public enemies, or the inherent defect, quality, or vice of the thing carried, or from insufficiency of package, or seizure under legal process, or for loss resulting from any act or omission of the shipper or owner of the goods, his agent or representative, or from saving or attempting to save life or property at sea, or from any deviation in rendering such service."

of his master and crew under the circumstances existing, there is nothing in the policy of the law to debar him from bargaining with the owners of cargo for a participation in the general average contribution. In behalf of the cargo-owners it is insisted that the construction placed upon the legislation in question by this court in *The Irrawaddy*, 171 U. S. 187, leaves the shipowner still disabled from making an agreement with the cargo-owners for a participation with them in general average contributions resulting from negligent navigation or management of the ship by its master and crew.

The latter view was adopted by the District Court in *New York & Cuba Mail S. S. Co.* v. *Ansonia Clock Co.*, 139 Fed. Rep. 894, where a clause identical with the one now under consideration was held invalid. This decision was apparently followed, although not cited, by the same court (162 Fed. Rep. 56), and by the Circuit Court of Appeals (178 Fed. Rep. 414, 416), in the case now under review. In reaching this result the courts below have, as we think, misconceived the effect of the language used by Mr. Justice Shiras, speaking for this court, in *The Irrawaddy*, and have given to that decision an import quite beyond its legitimate scope. In that case there was no agreement between shipowner and cargo-owner respecting general average, nor respecting the consequences of a stranding or other peril that might result from the negligence of the master or crew of the vessel. On familiar grounds, all of the expressions employed in the opinion are to be construed in the light of the facts of the case and the question actually presented for decision. This was, whether § 3 of the Harter Act, *proprio vigore*, gave to the shipowner, under the circumstances, a right to general average contribution for sacrifices made by him subsequent to the stranding of the vessel in successful efforts to save her and her freight and cargo. It was pointed out in the opinion that previous to that enactment, in the

case of a loss arising from the ship's fault, the shipowner was excluded from contribution by way of general average, and was also legally responsible to the owner of the cargo for loss and damage so occasioned; and that it was against the policy of the law to allow stipulations that would relieve a carrier from such liability. It was, however, recognized that it was "competent for Congress to make a change in the standard of duty." It was remarked that by the first and second sections of the Harter Act shipowners were prohibited from inserting in their bills of lading agreements limiting their liability in certain respects, and that the third section by its own terms limited their liability in other respects. The opinion, after stating that as the law stood before the passage of the act the shipowner could not contract against his liability and that of his vessel for loss occasioned by negligence or fault in officers and crew, and that in this particular the owners of American vessels were at a disadvantage as compared with the owners of foreign vessels, who might so contract, proceeded to say (p. 193) that "Congress thought fit to remove the disadvantage, not by declaring that it should be competent for the owners of vessels to exempt themselves from liability for the faults of the master and crew by stipulations to that effect contained in bills of lading, but by enacting that, if the owners exercised due diligence in making their ships seaworthy and in duly manning and equipping them, there should be no liability for the navigation and management of the ships, however faulty."

This language is laid hold of as indicating that the decision proceeded upon the ground that Congress thought it improper to permit owners of vessels to contract for exemption from liability. What it really means, as will be observed, is, that Congress went further, and by its own enactment exempted them from liability, under given conditions, for the consequences of faulty navigation.

The point of the decision in *The Irrawaddy* (and as an authority the case goes no further), is, that while the Harter Act relieved the shipowner from liability for his servant's negligence, it did not of its own force entitle him to share in a general average rendered necessary by such negligence.

It is, however, further insisted in behalf of the cargo-owners that the agreement in question is contrary to public policy in another respect, namely, in that it attempts to relieve the shipowner from one of the essential duties arising out of the relation of carrier and shipper, and from which the Harter Act has not relieved him. The argument is that although that act exempts him from the consequences of the negligent stranding, it leaves him still under the duty and obligation of caring for and preserving the cargo, after the stranding; that whenever the safety of the property entrusted to the shipowner is menaced, whether the peril be occasioned by *vis major* or by fault, and whether such fault be or be not of such character as to fall within the third section of the Harter Act, "the master is nevertheless bound to exert every effort to save the property, and if he fail in this duty his owners are liable to the cargo for the resulting loss." If by "every effort" is meant every *reasonable* effort, we see no occasion to question the soundness of the reasoning. But it is further insisted that the duty of the master to save the imperiled property extends so far as to call for a sacrifice of a part of the owner's property if necessary to save the cargo. In our opinion the master's duty as agent of the owner is not so extensive. If it were, there would be an end at once of all contribution in general average for ship's sacrifices, for such sacrifices could not be deemed voluntary and extraordinary, if made in performance of the owner's general duty to his cargo.

The cases cited do not support the contention of coun-

sel for the cargo-owners in this behalf. *Propeller Niagara* v. *Cordes,* 21 How. 7, 28, holds that although the vessel be stranded "the master is bound to the utmost exertions in his power to save the goods from the impending peril, as it is *no more than a prudent man would do* under like circumstances." *The Maggie Hammond,* 9 Wall. 435, 458, holds that when the vessel is wrecked or otherwise disabled in the course of the voyage and cannot be repaired without too great delay and expense, it is the duty of the master to transship the goods and send them forward, if another vessel can be had in the same or a contiguous port or within a reasonable distance, and that upon so doing he is entitled to *charge the goods with the increased freight* arising from the hire of the vessel so procured. In *Star of Hope,* 9 Wall. 203, 230, it is pointed out that the duty imposed upon the master, in case of a peril arising to the common adventure, is "to judge and determine at the time whether the circumstances of danger in such a case are or are not so great and pressing as to render a sacrifice of a portion of the associated interests indispensable for the common safety of the remainder." The duty to make a sacrifice of such portion of the associated interests as in the judgment of the master will save the common adventure is obviously inconsistent with the suggested duty to first sacrifice the owner's property for the safety of the cargo. The other cases cited upon this point require no mention.

In our opinion, so far as the Harter Act has relieved the shipowner from responsibility for the negligence of his master and crew, it is no longer against the policy of the law for him to contract with the cargo-owners for a participation in general average contribution growing out of such negligence; and since the clause contained in the bills of lading of the *Jason's* cargo admits the shipowner to share in the general average only under circumstances where by the act he is relieved from responsibility, the

provision in question is valid, and entitles him to contribution under the circumstances stated.

The second question is whether, under the like circumstances, the cargo-owners can recover contribution from the shipowner for sacrifices of cargo made subsequent to the stranding, for the common benefit and safety of ship, cargo and freight.

This question was dealt with in *The Strathdon*, 94 Fed. Rep. 206; 101 Fed. Rep. 600; 41 C. C. A. 515; where, however, there seems to have been no general average clause such as we have in the case before us; and by the same courts in this case, 162 Fed. Rep. 56; 178 Fed. Rep. 414; where the general average clause was dealt with as invalid, and therefore, of course, was given no influence in the determination of the present point. The Circuit Court of Appeals expressed the view that if the cargo-owner were allowed to obtain indirectly through a general average adjustment, compensation for losses attributable to the faulty navigation of the ship, and which therefore he could not recover directly because of § 3 of the Harter Act, the result would be a judicial repeal of that section, and that therefore the cargo-owner could not bring the shipowner as a contributing interest into a general average adjustment that might result in a claim which the Harter Act disallows. With this view we have no present concern, because it seems to us that the response we are to make to the second question certified must depend upon the construction of the agreement between the parties. Having already held that the general average clause contained in the bill of lading is valid as against the cargo-owner, it follows *ex necessitate* that it is valid in his favor; indeed, no ground is suggested for disabling the shipowner from voluntarily subjecting himself or his ship to liability to respond to the cargo in an action or in a general average adjustment, for the consequences of the negligence of his master or crew, even

though by the Harter Act he is relieved from responsibility for such negligence. Therefore we have only to determine whether by the language of the general average clause the cargo-owners are entitled to contribution from the ship for sacrifices of cargo made subsequent to the stranding for the common benefit and safety. The language is that in the circumstances presented "the consignees or owners of the cargo shall not be exempted from liability for contribution in general average, or for any special charges incurred, but with the shipowner shall contribute in general average, and shall pay such special charges, as if such danger, damage or disaster had not resulted from such default, negligence," etc. This language clearly imports an agreement that the shipowner shall contribute in general average. The opposite view would render the clause inconsistent with the principles of equity and reciprocity upon which the entire law of general average is founded.

The foregoing considerations compel a negative answer to the third question. In view of the valid stipulations contained in the bill of lading, it would be a contradiction of terms to permit the cargo-owners to recover contribution from the ship in respect of general average sacrifices of cargo, without on their part contributing to the general average sacrifices and expenditures of the shipowner made for the same purpose. This would not be general average contribution, the essence of which is that extraordinary sacrifices made and expenses incurred for the common benefit and safety are to be borne proportionately by all who are interested.

Our conclusion, accordingly, is that of the questions certified to us by the Circuit Court of Appeals, the first question should be answered in the affirmative, the second question should be answered in the affirmative, and the third question should be answered in the negative, and it is *So ordered.*