**MERKLEN v. JOHNSON & HIGGINS et al.**

District Court, S. D. New York.
June 22, 1933.

Bigham, Englar, Jones & Houston, of New York City (Martin Detels, of New York City, of counsel), for plaintiff.

George Z. Medalie, U. S. Atty., of New York City (Charles E. Wythe, of New York City, of counsel), for defendants.

PATTERSON, District Judge.

This is a suit by the assignee of owners of cargo on the steamship Panola to recover from Johnson & Higgins moneys deposited by the cargo owners as security for general average contributions. The merits of the plaintiff's case turn solely on whether the cargo owners are liable to contribution in general average. If they are liable, the suit must be dismissed; if they are not liable, the plaintiff should prevail.

The facts are stipulated. The Panola sailed from New York on July 6, 1920, bound for Scandinavian ports. On sailing she was not seaworthy as to her pumps, nor had the owner exercised due diligence to make her seaworthy in this respect. Pump trouble developed in the course of the voyage, and it proved necessary for the ship to go into Halifax for repairs. The repairs were made, and no claim for general average contribution was made on account of this incident. Later in the voyage, however, the boilers were disabled due to salting of the tubes and the vessel had to be towed to Kristiansand for repairs to the boilers. As to this trouble, it is conceded that it arose from negligence of the ship's engineers in managing the ship. There was no causal connection between the initial trouble with the pumps and the later salting of the boilers, nor was there any unseaworthiness at the commencement of the voyage as to the boilers. The ship's claim for general average contribution from cargo is for expenses resulting from the breakdown of the boilers.

The bills of lading under which the cargo was carried contained the usual Jason clause, in the following words: "General average shall be payable according to York-Antwerp Rules, and as to matters not therein provided for according to the laws and usages at the port of New York. The general average in every instance shall be prepared by average adjusters selected by the ship owner. If the ship owner shall have exercised due diligence to make the vessel in all respects seaworthy and to have her properly manned, equipped and supplied in case of danger, damage, or disaster, resulting from accident, or from faults or errors in navigation or in the management of, or from any latent or other defect in the vessel, her machinery or appurtenances, from unseaworthiness, even though existing at the time of shipment or at the beginning of the voyage, provided the defect or unseaworthiness was not discoverable by the exercise of due diligence, the shippers, consignees or owners of the cargo shall nevertheless pay salvage and any special charges incurred in respect of the cargo, and shall contribute with the ship owners in general average to the payment of any sacrifices, loss-

es, or expenses of a general average nature that may be made or incurred for the common benefit, or to relieve the adventure of any common peril, all with the same force and effect and to the same extent as if such accident, danger, damage or disaster had not resulted from, or been occasioned by, faults, errors in navigation, or in the management of the vessel, or by any latent or other defect or unseaworthiness. Salvage services rendered to the goods by another vessel owned by or in the service of the ship owner shall be paid for as fully as if such vessel were owned by strangers."

■ But for the presence of the Jason clause the owners of cargo would not be liable in general average for expenses incurred because of the breakdown of the boilers. That trouble arose from negligence in operation of the ship. In such a case the shipowner cannot compel the cargo owners to contribute in general average for losses; the Harter Act (46 USCA §§ 190–195) has no application. The Irrawaddy, 171 U. S. 187, 18 S. Ct. 831, 43 L. Ed. 130. The defendant's contention therefore must be and is that the Jason clause imposes a contractual liability on the cargo owners to make contribution. The clause is a valid one. The Jason, 225 U. S. 32, 32 S. Ct. 560, 56 L. Ed. 969.

■ By force of the Jason clause, the cargo owners are under an obligation to contribute in general average in cases of danger, damage, or disaster resulting from faults or errors in navigation or in the management of the vessel, her machinery or appurtenances. But it is a condition precedent to any such liability that the shipowner "shall have exercised due diligence to make the vessel in all respects seaworthy and to have her properly manned, equipped and supplied." Here the condition precedent was not fulfilled. The vessel was not seaworthy in respect to her pumps. It follows that the obligation never became a binding one.

■ The defendant concedes that this is the inevitable result upon a literal reading of the contract of affreightment. The contention is, however, that the contract so read is too harsh, too burdensome on the shipowner, and that the agreement should be construed as permitting general average in all cases except where due diligence has not been used to make the ship seaworthy and there is a causal connection between the unseaworthiness and the danger, damage, or disaster that resulted in loss. But the clause as it stands is unambiguous; the phraseology is that of the shipowner; and it is not apparent by what process a court can change the effect of the words used.

It is said that section 3 of the Harter Act (46 USCA § 192) furnishes an analogy; that although under the statute the carrier's exemption from liability for losses due to faults in navigation is literally conditioned upon his exercise of due diligence to make the vessel "in all respects" seaworthy, it has been held that the carrier does not lose the exemption unless there are present both a failure to exercise due diligence as to seaworthiness and a causal connection between the unseaworthiness and the loss or damage to cargo. While the trend of decisions in this circuit seems to be to that effect, it is questionable whether the Circuit Court of Appeals has yet definitely committed itself on the point. The Elkton (C. C. A.) 49 F.(2d) 700; but see The Isis (May v. Hamburg-Amerikanische Packetfahrt Aktien-Gesellschaft) (C. C. A.) 63 F.(2d) 248. But whatever may be the rule as to the construction of the Harter Act, the case is not necessarily the same with a contract voluntarily entered into between carrier and shipper. The contracts in question were made in 1920. It would be going very far to say, first, that section 3 of the Harter Act had at that time the settled construction which the defendant contends for, and, second, that the parties to these contracts intended to have that construction govern the meaning of a condition precedent in the contracts which was framed in language similar to the condition precedent in the statute.

The plaintiff is entitled to recover the deposits and will have judgment accordingly.