**J. HOWARD SMITH, INC., et al.,**
**Plaintiffs-Appellants,**

**v.**

**S. S. MARANON, her engines, boilers, etc., and Corporacion Peruana de Vapores, Defendant-Appellee.**

**No. 822, Docket 73–1921.**

United States Court of Appeals,
Second Circuit.

Argued April 22, 1974.

Decided July 25, 1974.

As Modified on Rehearing Sept. 3, 1974.

Donald M. Kennedy, New York City (Donovan, Donovan, Maloof & Walsh, New York City, on the brief), for plaintiffs-appellants.

Richard T. O'Connell, New York City (Healy & Baillie, New York City, on the brief), for defendant-appellee.

Before LUMBARD and HAYS, Circuit Judges, and JAMESON, District Judge.*

HAYS, Circuit Judge:

A group of cargo owners brought this action to recover from the carrier losses incurred when their cargoes of fishmeal caught fire aboard the vessel. The carrier counterclaimed seeking contribution in general average. The district court found the carrier free from fault and therefore dismissed the complaint and granted the carrier judgment on the counterclaim.

We affirm.

In April and May, 1965, the S.S. Maranon picked up some 132,000 bags of anchovy fishmeal at Matarani, Callao, Huacho, and Chancay, Peru, and headed for Baltimore, Maryland. A few days after leaving Chancay the crew discovered overheating in some of the sacks of fishmeal that had been loaded at Matarani. The master of the ship ordered certain sacks placed on deck and others jettisoned in an attempt to isolate and alleviate the problem.

The master contacted the owner, and when the vessel reached Cristobal, Panama Canal Zone surveyors were brought aboard. After the surveyors examined the cargo and reported their findings it was decided that the ship would proceed.

Shortly after leaving Cristobal overheating recurred and fire broke out in the Matarani cargo. The master continued the voyage but then decided to dock in Savannah, Georgia, where the voyage was terminated and general average declared.

To impose liability on the shipowner for the loss suffered to the cargo, the cargo owner must show "design or neglect" or "actual fault or privity" by the carrier. Negligence of the master or the crew will not suffice. 46 U.S.C. § 182 (1970); Carriage of Goods by Sea Act § 4(2)(b), 46 U.S.C. § 1304(2)(b) (1970). Appellants' case does not meet this statutory standard.

If improperly prepared for shipment fishmeal may ignite through spontaneous combustion. The carrier is not liable for damage arising from such inherent defects. Carriage of Goods by Sea Act § 4(2)(m), 46 U.S.C. §

---

* Honorable William J. Jameson, Senior District Judge for the District of Montana, sitting by designation.

1304(2)(m) (1970). Where cargo has such a propensity for damage due to latent defects the shipper bears the burden of proving delivery to the carrier in good condition. Elia Salzman Tobacco Co. v. S.S. Mormacwind, 371 F.2d 537, 539 (2d Cir. 1967); Commodity Service Corp. v. Hamburg-American Line, 354 F.2d 234 (2d Cir. 1965). In an attempt to discharge this burden appellants introduced a Fishmeal Certificate of Inspection for the Matarani cargo prepared by a firm of cargo surveyors in Peru. The district court properly found this inadequate in two respects.

First, appellants failed to establish a foundation adequate to bring the certificate within the scope of the "business records" exception to the hearsay rule, 28 U.S.C. § 1732 (1970). In United States v. Rosenstein, 474 F.2d 705 (2d Cir. 1973), this court held that the foundation must be laid by "someone who is sufficiently familiar with the business practice." Id. at 710. We declared that, while the foundation need not be established by one who personally makes or keeps the records, it was insufficient to rely on one who had no direct knowledge of the business practice of the company which kept the records.[1]

■ Appellants sought to establish the foundation through the testimony of an employee of one of the appellants who was not associated with the Peruvian firm. He had no personal knowledge of how the firm created or kept the records. Thus there was no testimony by "someone who is sufficiently familiar with the business practice" of the record-keeping company, and no adequate foundation was established.

■ The district court also properly rejected the certificates on the ground that they contained conclusions about the temperature, fat content, and moisture content of the cargo without indicating how such measurements were tak-

en or whether the inspection extended to possible defects not apparent from an internal examination. Had they been admitted there would have been no way for appellees to determine by cross-examination how reliable the records were. Cf. Aunt Mid, Inc. v. Fjell-Oranje Lines, 458 F.2d 712, 719 (7th Cir.), cert. denied, 409 U.S. 877, 93 S.Ct. 130, 34 L. Ed.2d 131 (1972). The certificates were not admissible. See The Niel Maersk, 91 F.2d 932, 933 (2d Cir.), cert. denied, 302 U.S. 753, 58 S.Ct. 281, 82 L.Ed. 582 (1937).

■ As to the non-Matarani cargo there was not even an attempt to prove delivery in good condition. Thus appellants did not sustain their burden as to any part of the cargo.

■ Appellants claim that appellee failed to maintain proper ventilation of the cargo during the voyage. They relied on the absence of entries in the ship's log indicating when the ship's mechanical ventilation system was started. However, the master of the ship testified that he started the system when the fishmeal was first loaded and continued it throughout the voyage. The conflict in the evidence was for the district court to resolve. Appellants also claim that stowage of the fishmeal was improper. There was ample evidence that the stowage, though not perfect, reasonably complied with the "South African Strip" method. The conclusion that stowage and ventilation aboard the Maranon were proper was not clearly erroneous.

Appellants claim that, even if improper ventilation did not start the fires in the ship, the owners of the ship assumed control from the master when the ship reached the Canal Zone, thereby waiving their protection under 46 U.S.C. §§ 182 and 1304(2)(b), and that they were therefore liable for the results of their negligent decision to have the Maranon

---

1. See also Phillips v. United States, 356 F.2d 297, 307 (9th Cir. 1965), cert. denied, Walker v. United States, 384 U.S. 952, 86 S.Ct. 1573, 16 L.Ed.2d 548 (1966), where the court found documents inadmissible because "[t]hey were not made in the regular course of the business of the company in whose files they were found . . . ."

proceed.[2]   See May v. Hamburg-Amerikanische Packetfahrt Aktiengesellschaft, 290 U.S. 333, 344, 54 S.Ct. 162, 78 L.Ed. 348 (1933).

■ The conclusion of the district court that the master retained control of the ship is not clearly erroneous. The communications between the master and the owner are subject to different interpretations. The master testified that he never relinquished control of the ship. It was the proper province of the district court to resolve any conflicts in the evidence.

■ Appellants claim that the master was negligent in not using carbon dioxide to extinguish the fires when they first appeared. The negligence of the master, as we have observed, does not give rise to liability of the carrier. Nor does it defeat the claim of the carrier for contribution in general average where the bills of lading include a "Jason" clause, which invokes the right to general average for damage caused by the negligence of the crew or the master. The Jason, 225 U.S. 32, 32 S.Ct. 560, 56 L.Ed. 969 (1912). However, the bills of lading in this case did not contain a Jason clause, and the case is therefore controlled by the traditional rule that the ship at fault has no right to general average contribution. The Irrawaddy, 171 U.S. 187, 18 S.Ct. 831, 43 L.Ed. 130 (1898); G. Gilmore & C. Black, The Law of Admiralty § 5-13 (1957).

■ However, the district court found that the master was not negligent in declining to use $CO_2$. There was testimony that the gas might condense and cause further damage, and that the conduct of the crew and captain actually minimized damage to the cargo. We cannot hold the finding of the trial judge clearly erroneous.

Affirmed.

2. Appellants have apparently abandoned the claim based on the decision to have the Maranon proceed despite a rupture in one of its four cylinder casings before it arrived at Cristobal.