## AKTIESELSKABET CUZCO *v.* THE SUCARSECO
### ET AL.

No. 524. Argued February 14, 1935.—Decided March 4, 1935.

*Mr. William H. McGrann,* with whom *Messrs. Cletus Keating* and *Roger B. Siddall* were on the brief, for petitioner.

396

*Mr. D. Roger Englar,* with whom *Mr. Leonard J. Matteson* was on the brief, for respondents.

MR. CHIEF JUSTICE HUGHES delivered the opinion of the Court.

The question in this case arises out of a collision at sea between the Norwegian vessel Toluma and the American vessel Sucarseco. Both vessels were at fault and both were damaged. The Sucarseco proceeded on her voyage. The Toluma put into a port of refuge for necessary repairs. To permit these repairs, a part of her cargo was discharged; it was later reloaded and the Toluma completed her voyage. A general average statement was prepared which apportioned the expenses and losses, so far as they were of a general average nature, between the owner of the Toluma and the cargo owners.

Three suits were brought in admiralty and were consolidated for trial. One was a libel for damages brought by the owner of the Toluma against the Sucarseco. Another was a cross libel for damages by the owner of the Sucarseco against the Toluma. The third libel was by the owners of cargo on the Toluma against the owner of the Sucarseco to recover their damages, including the amounts which the cargo owners had paid as general average contributions.

The only question presented here is with respect to the claim of the cargo owners. Their right to recover against the Sucarseco, the non-carrying vessel, is not contested so

far as the physical damage to the cargo is concerned. The contest is with respect to the contributions of the cargo owners in general average. The Circuit Court of Appeals, reversing the District Court, allowed that recovery. 72 F. (2d) 690. Because of the importance of the question, which has not been decided by this Court, a writ of certiorari was granted, December 3, 1934.

There is no dispute that both vessels were seaworthy and that the collision was due to the fault in navigation of both vessels equally. No question has been raised as to the correctness of the general average adjustment. As, through the application to the instant case of the rule for the division of the entire loss equally between the vessels,[1] the ultimate share to be borne by the Sucarseco will not be affected by the determination of the present claim of the cargo owners, the Sucarseco is indifferent to the result and the claim is opposed by the Toluma.

The cargo was carried under a provision of the bill of lading, known as the " Jason clause," that in case " of danger, damage or disaster " resulting " from faults or errors in navigation," and if the shipowner " shall have exercised due diligence to make the vessel seaworthy and properly manned, equipped and supplied," the owners of the cargo shall contribute with the shipowner in general average " to the payment of any sacrifices, losses or expenses of a general average nature that may be incurred for the common benefit " to the same extent as if the danger, damage or disaster had not resulted from faults or errors in navigation.[2] The clause is substantially to the

---

[1] See *The North Star*, 106 U. S. 17; *The Chattahoochee*, 173 U. S. 540.

[2] The applicable clause in the bill of lading is as follows:

" In case of danger, damage or disaster resulting from accident or from faults or errors in navigation or in the management of or from any latent or other defect of the vessel, her machinery or appurtenances, from unseaworthiness, even though existing at the time of

same effect as the one sustained in the case of *The Jason*, 225 U. S. 32, and has received its popular designation from that decision. Petitioner contends that the liability of cargo to contribute in general average results solely from this provision in the contract of carriage; that the owners of the Sucarseco were not parties to that contract; and that the claim of the cargo owners for the refund of their general average contributions is derivative and not directly recoverable from the Sucarseco, the cargo owners being entitled only to an accounting from their carrier (the Toluma) for their ratable proportion of that carrier's recovery. Respondents insist that cargo's contributions in general average are a part of cargo's " collision damage " and are recoverable from the Sucarseco as a tortfeasor in the same manner as physical damage.

While the damages due to a collision, when both vessels are at fault, are divided as between themselves, the innocent cargo owner may recover his full damages from the non-carrying vessel. *The Atlas*, 93 U. S. 302, 315; *The New York*, 175 U. S. 187, 209, 210; *Canada Malting Co.* v. *Paterson Steamships*, 285 U. S. 413, 418. This is so, al-

---

shipment or at the beginning of the voyage, if the defect or unseaworthiness was not discoverable by the exercise of due diligence and if the ship-owner shall have exercised due diligence to make the vessel seaworthy and properly manned, equipped and supplied with respect to the matters concerned in the aforesaid danger, damage or disaster, then the shippers, consignees. or owners of the cargo or the holders of this bill of lading shall nevertheless pay salvage and any special charges incurred in respect of the cargo and shall contribute with the shipowners in general average to the payment of any sacrifices, losses or expenses of a general average nature that may be made or incurred for the common benefit or to relieve the adventure of any common peril, all with the same force and effect and to the same extent as if such accident, danger, damage or disaster had not resulted from or been occasioned by faults or errors in navigation or in the management of the vessel or by any latent or other defect or unseaworthiness."

though the carrying vessel may be free from liability to the cargo owners by reason of the application of section three of the Harter Act, 46 U. S. C. 192.[3] On a division of the entire damages between the two vessels, the non-carrying vessel may recoup one-half of the amount paid to the cargo owners. *The Chattahooche,* 173 U. S. 540, 554, 555. The direct liability of the non-carrying vessel " for all the damage to cargo " is " one of the consequences plainly to be foreseen," and the responsibility of the carrying vessel to the non-carrying vessel is measured accordingly. *Erie R. Co.* v. *Erie & Western Transportation Co.,* 204 U. S. 220, 226.

In the stipulation of facts, the parties agreed that the expenses, for which recovery is now sought as a part of cargo's damage, were " of a general average nature." The description is brief but adequate. It is a description which incorporates the essential conditions of general average. It means that there was a common imminent peril and a voluntary sacrifice or extraordinary expenses necessarily made or incurred to avert the peril and with a resulting common benefit to the adventure. *Columbian Insurance Co.* v. *Ashby,* 13 Pet. 331, 338; *McAndrews* v. *Thatcher,* 3 Wall. 347, 365; *The Star of Hope,* 9 Wall. 203, 228, 229; *Ralli* v. *Troop,* 157 U. S. 386, 394, 395, 403; *The Jason, supra,* pp. 48, 49. It means that the sacrifice or expenses fell upon the whole adventure and were to be assessed in proportion to the share of each in that adventure. *The Star of Hope, supra; Ralli* v. *Troop, supra.* This is the basic consideration in determining the present question.

Prior to the Harter Act, a common carrier by sea could not exempt himself from liability to the cargo owner for damages caused by the negligence of master or crew. *Liverpool & G. W. Steam Co.* v. *Phenix Insurance Co.,* 129

---

[3] Act of February 13, 1893, c. 105, 27 Stat. 445.

U. S. 397.  The Harter Act, prohibiting, by sections one
and two, agreements with a shipowner which would relieve
him from responsibility for the proper loading, stowage,
custody, care, or delivery of the cargo, or from the duty to
exercise due diligence to make the vessel seaworthy, pro-
vided in section three that if the shipowner did exercise
due diligence " to make the vessel in all respects seaworthy
and properly manned, equipped and supplied," neither the
vessel nor her owner should be responsible for damages re-
sulting " from faults or errors in navigation or in the man-
agement of the vessel."   The question then arose whether
a shipowner who had exercised that due diligence was
entitled to general average contribution for sacrifices made
by him, subsequent to a stranding of his vessel, in success-
ful efforts to save vessel, freight and cargo.  That right
was denied the shipowner in *The Irrawaddy*, 171 U. S. 187.
The point of that decision was carefully stated in *The
Jason, supra*, p. 54.  The Court there said that the au-
thority of *The Irrawaddy* went no further than that "while
the Harter Act relieved the shipowner from liability for
his servant's negligence, it did not of its own force entitle
him to share in a general average rendered necessary by
such negligence."  But, as the Harter Act had relieved
the diligent shipowner from responsibility for the negli-
gence of his master and crew, the Court decided in *The
Jason* that it was " no longer against the policy of the law "
for him to contract with the cargo owners " for a partici-
pation in general average contribution growing out of such
negligence."  Upon this ground, the validity of the
" Jason clause," similar to the one now before us, was
upheld.

What then is the effect of the " Jason clause "?  It in
no way changes the essential features of general average
contributions.  It must still appear that voluntary and
successful sacrifices have been made or extraordinary ex-
penses incurred on behalf of those interested in the ad-

venture in order to avert a common imminent peril, with resulting benefit to the adventure upon which the burden of such sacrifices and expenses appropriately rests. As the master of the ship is charged with the duty, and clothed with the power, to determine at the time " whether the circumstances of danger in such a case are or are not so great and pressing as to render a sacrifice of a portion of the associated interests indispensable for the common safety of the remainder," the effect of the " Jason clause " is to invest the master with authority and responsibility to act directly for cargo in relation to cargo's duty to contribute in general average. The master becomes for that purpose the representative of cargo. *Lawrence* v. *Minturn,* 17 How. 100, 109, 110; *The Star of Hope, supra,* p. 230; *Ralli* v. *Troop, supra,* pp. 397, 398; *The Gratitudine,* 3 C. Rob. 240, 257, 258, 260; *Burton & Co.* v. *English & Co.,* 12 Q. B. D. 218, 223. In *The Jason, supra,* p. 54, the Court pointed out that as sacrifices and expenses, in order to justify the general average contribution, must be voluntary and extraordinary, they could not be regarded as made in the performance of the general duty of the shipowner to his cargo. The " Jason clause " was sustained because it admitted the shipowner to share in general average only in circumstances where by the Harter Act he was relieved from responsibility. *Id.,* pp. 55, 56.

It is with this understanding of the effect of the clause that we come to the question as to the right of the cargo owners to include, in the damages they have suffered by reason of the collision, their general average contributions. That the extraordinary expenses, thus shared, were due to the collision cannot be gainsaid. It is because they were thus directly caused, that these expenses form part of the damages to be divided between the two vessels. On this basis they were included in the decree for division made by the District Court and the propriety of the inclusion of

these amounts in the total damages to be divided between the vessels is not questioned. But the right to that inclusion springs directly from the tort and in that relation no question is raised as to proximate cause or foreseeable consequences.

The nature of these expenditures and the fact that they are traceable directly to the collision are not changed by the sharing in general average. That merely affects the distribution of the loss, not its cause. The claim of the cargo owners for their general average contributions is not in any sense a derivative claim. It accrues to the cargo owners in their own right. It accrues because of cargo's own participation in the common adventure and the action taken on behalf of cargo and by its representative to avert a peril with which that adventure was threatened. Being cargo's own share of the expense incurred in the common interest, the amount which is paid properly belongs in the category of damage which the cargo owners have suffered by reason of the collision. *The Energia,* 61 Fed. 222; 66 Fed. 604, 608. The right does not stand on subrogation any more than the right of Sucarseco to bring into the division of damages the amount it has to pay to the cargo owners rests on subrogation. See *Erie R. Co.* v. *Erie & Western Transportation Co., supra.* In each case the right arises directly from the tort.

The contention as to remoteness is but another way of presenting the same question. This is not a case of an attempt, by reason of " a tort to the person or property of one man," to make the tort-feasor liable to another " merely because the injured person was under a contract with that other, unknown to the doer of the wrong." See *Robins Dry Dock & Repair Co.* v. *Flint,* 275 U. S. 303, 309; *Elliott Steam Tug Co.* v. *Shipping Controller* [1922] 1 K. B. 127, 139, 142; *The Federal No. 2,* 21 F. (2d) 313. Here, cargo as well as ship was placed in jeopardy. That jeopardy was due in part to the negligence of the vessel against which the claim is made. The fact that the vessel

and the cargo under the " Jason clause " bear their proportionate shares of the expenses gives Sucarseco no ground for a contention that the expenses themselves, or the share that cargo bears, were not occasioned directly by the tort.   In the light of the nature of the general average contributions, and of the event which made them necessary, the fact that they were made under the stipulation in the "Jason clause " is no more a defense to Sucarseco than is the fact that the cargo was placed on board under a contract to carry it.   Indeed, Sucarseco makes no contention of immunity.   The question arises only because, through recovery by the cargo owners from Sucarseco, Toluma's share of the ultimate division is affected. But that does not establish remoteness.   We have the anomalous situation that it is Toluma that is opposing the cargo owners' claim against Sucarseco, while Toluma has collected from cargo its share of the general average expenses on the ground that they were incurred on cargo's behalf and were due to the collision.

As we have said, the " Jason clause " merely distributed a loss for which Sucarseco was responsible and in that view the cargo owners are entitled to recover that part of the loss which they have sustained.

The decree of the Circuit Court of Appeals is

*Affirmed.*