THE W. W. BRUCE.

THE SAN VINCENTE.

WEYERHAEUSER TIMBER CO. et al. v. CONTINENTAL S. S. CO. et al.

No. 14428.

District Court, E. D. New York.
April 24, 1936.

Bigham, Englar, Jones & Houston, of New York City (T. Catesby Jones, of New York City, of counsel), for libelants exceptants.

Kirlin, Campbell, Hickox, Keating & McGrann, of New York City (Cletus Keating, of New York City, of counsel), for the San Vincente and Pacific-Atlantic S. S. Co.

## ABRUZZO, District Judge.

The libel and complaint of the Weyerhaeuser Timber Company was originally brought against the tank steamer W. W. Bruce, Continental Steamship Company, and Continental Oil Company. The Weyerhaeuser Timber Company and other shippers were the owners of certain lumber laden on the steamship San Vincente. The San Vincente collided with the steamship W. W. Bruce, causing serious damage to the cargo owned by the Weyerhaeuser Timber Company and other shippers, totaling some 146.

The collision between the steamship San Vincente and the tank steamer W. W. Bruce occurred on October 13, 1934, in Craighill Channel while the San Vincente was on its way from the port of Baltimore bound for Norfolk, Va. The lumber cargo on the San Vincente consisted of 2,005,000 feet of lumber.

The tank steamer W. W. Bruce impleaded the Pacific-Atlantic Steamship Company and the steamship San Vincente, the Pacific-Atlantic Steamship Company being the owner of the steamship San Vincente. The Pacific-Atlantic Steamship Company as the owner and the San Vincente then impleaded the Weyerhaeuser Timber Company together with the other 146 libelants.

Under this impleader by the Pacific-Atlantic Steamship Company and the San Vincente, it was claimed by the Pacific-Atlantic Steamship Company and the San Vincente that clause VII of the bill of lading provided reimbursement to them by the libelants, the Weyerhaeuser Timber Company, et al., for any damage which the Pacific-Atlantic Steamship Company and the San Vincente were compelled to pay the W. W. Bruce and Continental Steamship Company et al.

The motion before the court is the exceptions of the Weyerhaeuser Timber Company et al. to the petition filed by the Pacific-Atlantic Steamship Company and the steamship San Vincente. The exceptions assign many reasons why the petition of the Pacific-Atlantic Steamship Company and the San Vincente should be expunged from the record.

The most important exception is in relation to clause VII of the bill of lading of the San Vincente, which reads as follows: "If the shipowner shall have exercised due diligence to make the ship seaworthy and properly manned, equipped and supplied, it is hereby agreed that in the event of the ship coming into collision with another ship as a result of negligent navigation of both ships, the owners of the cargo carried under this bill of lading will indemnify the shipowner against all liability to the other ship or her owners in so far as such liability represents loss, damage or claim of said cargo paid or payable, by the other ship or her owners, and set off, recouped or recovered by the other ship or her owners as part of their claim against the carrying ship or shipowner."

The important question with relation to this clause is whether or not it comes within section 3 of the Harter Act (46 U. S.C.A. § 192); and, secondly, whether this clause is against public policy. The exceptions also contend that clause VII in the bill of lading is a contract of insurance and therefore void because of that.

Other questions are raised by the exceptions:

(1) That the libelants made any such promise as that contained in clause VII.

(2) That the bills of lading were not signed by the libelants.

(3) That the laws of the ports from which the shipments were made should apply.

(4) The states in which the bills of lading contracts were entered into should govern.

The exception with respect to clause VII being a contract of insurance, and the others numbered one (1), two (2), three (3), and four (4) as aforesaid, are all overruled.

■ The court will, therefore, discuss in this opinion the two questions brought on by exceptions (1) whether or not it is against public policy and (2) whether or not clause VII comes within section 3 of the Harter Act (46 U.S.C.A. § 192).

With relation to the question of public policy it is apparent from the reading of the cases that prior to the passage of the Harter Act (46 U.S.C.A. §§ 190–195), clause VII in the bill of lading of the San Vincente would be clearly against public policy and therefore, unless this clause can be found to come within section 3 of the Harter Act, the exception to it must be sustained.

If, on the other hand, it can be construed that this clause of the bill of lading comes under section 3 of the Harter Act, then this exception must be overruled.

The two cases that seem to be most in point cited in the briefs are The Jason, 225 U.S. 32, 32 S.Ct. 560, 56 L.Ed. 969 (from which the so-called "Jason Clause" came), and Aktieselskabet Cuzco v. The Sucarseco, 294 U.S. 394, 55 S.Ct. 467, 79 L.Ed. 942. The Jason Case is cited in the late case of Aktieselskabet Cuzco v. The Sucarseco, 294 U.S. 394, 55 S.Ct. 467, 79 L.Ed. 942, wherein Mr. Chief Justice Hughes delivered the opinion.

In The Jason Case, a general average agreement in the bill of lading entitling a shipowner to collect general average contribution from the cargo owners under the circumstances of that case was held to come within the Harter Act.

In the case of Aktieselskabet Cuzco v. The Sucarseco, 294 U.S. 394, 55 S.Ct. 467, 79 L.Ed. 942, the Jason Clause was sustained because it admitted the shipowner to share in general average only in circumstances where, by the Harter Act, he was relieved from responsibility.

Undoubtedly the Jason Clause broadened to a certain extent the language contained in the Harter Act so that shipowners were permitted to incorporate in their bills of lading a clause in conformity with the Jason decision.

The Weyerhaeuser Timber Company contends that clause VII of the bill of lading is an agreement that clearly violates the Harter Act; contending further that the Jason decision and the Aktieselskabet Cuzco v. The Sucarseco decision plainly held that the Harter Act must be strictly interpreted and that clause VII would violate the strict interpretation of the Harter Act.

On the other hand, the owners of the steamship San Vincente contend that the clause in the bill of lading is only an extension of the language, or at least the purport of the Harter Act, and if it were the intention of the Harter Act to relieve the owners of vessels from full responsibility, it surely was the intention of the Harter Act to relieve them from partial responsibility. In other words, the Harter Act not only locked the front door, but also the back door. Thus, if the Harter Act intended that a ship was not responsible for full damages to cargo owners, an agreement such as contained in clause VII by the owners of the ship and the shippers of cargo would not be a violation of the Harter Act, but merely an extension of the real purpose for which the Harter Act was passed, viz., the relieving of the cargo-carrying ship of responsibility for damage to the cargo that it was carrying.

The court is constrained to hold that clause VII of the bill of lading comes at least within the purport and intention of the framers of the Harter Act and that The Jason decision seems to indicate that with respect to matters coming within the Harter Act, owners of ships and the shippers of goods may make an agreement as is stated in clause VII of this bill of lading. The liability of the shipowner and the public policy concerning his liability, exempting him from responsibility, was the benefit which the Harter Act intended to accord to said shipowners. Thus, a change in the public policy of the United States of America to assist the shipowners was clearly indicated by section 3 of the Harter Act. An agreement such as clause VII gives to the shipowner the full benefit of this act and is, therefore, reasonable and valid.

■ This clause of the bill of lading only applies as between the owner of the cargo and the owner of the ship and cannot be held to extend any further than that. It has no application as between the owner of the cargo and the tank steamer W. W. Bruce, or the owner of the steamship San Vincente and the W. W. Bruce.

Any different ruling would, in the opinion of this court, destroy the apparent purport and intention of the Harter Act. This act was passed to relieve cargo-carrying ships of responsibility for damages to the owners of cargo, provided that owners of ships met certain conditions outlined in this act. Any other ruling would seem untenable.

The exceptions are therefore overruled.