UNITED STATES v. THE ESSO BELGIUM (ATLANTIC MUT. INS. CO. et al., Interveners).

BELGIAN OVERSEAS TRANSPORT, S. A. v. UNITED STATES et al. THE NATHANIEL BACON.

United States District Court
S. D. New York.
May 9, 1950.

John F. X. McGohey, United States Attorney, New York City, Burlingham, Veeder, Clark & Hupper, New York City (Edward L. Smith, Special Assistant to the Attorney General, Chauncey I. Clark, Ray Rood Allen and Benjamin E. Haller, New York City, advocates), proctors for the United States.

Bigham, Englar, Jones & Houston, New York City (Leonard J. Matteson and Richard F. Shaw, New York City, advocates), proctors for interveners and Farr Sugar Corporation and others.

Kirlin, Campbell, Hickox & Keating, New York City (Cletus Keating, Edwin S. Murphy and Louis J. Gusmano, New York City, advocates), proctors for The Esso Belgium and Belgian Overseas Transport, S.A.

MEDINA, District Judge.

This litigation arises out of a collision which occurred in New York Harbor on November 24, 1942, between the S. S. Nathaniel Bacon and the M/V Esso Belgium. As a result of the collision both the vessels and the cargo aboard the Nathaniel Bacon sustained damage.

The first action was instituted by libellant United States of America, as owner of the Nathaniel Bacon and as bailee of her cargo, against the Esso Belgium seeking to recover for the damage done to the Nathaniel Bacon and to her cargo. Certain insurance companies which had paid the cargo owners their losses intervened as libellants to assert the subrogated rights of the cargo owners against the Esso Belgium.

The second action is a cross-libel filed by the owner of the Esso Belgium seeking to recover from the United States as owner of the Nathaniel Bacon for the damage suffered by the Esso Belgium, including the amount it might be held liable to pay for damage to the cargo aboard the Nathaniel Bacon. The United States then impleaded the owners of the cargo aboard the Nathaniel Bacon, only two of whom have appeared, seeking indemnity from them pursuant to the provisions of the so-called "Both-to-Blame" clause contained in the bills of lading issued by the Nathaniel Bacon to them. The clause is commonly used in ocean carriers' bills of lading and was designed to correct a curious anomaly resulting from the inter-relation of certain rules of Admiralty Law.

■ By virtue of the provisions of § 3 of the Harter Act, 46 U.S.C.A. § 192, and § 4(2) (a) of the Carriage of Goods by Sea Act, 46 U.S.C.A. § 1304(2) (a), the carrier is not liable to the owner of cargo laden aboard her for damage to cargo resulting from negligence of the carrier's servants in the management of the ship. The risk of loss due to such damage must be borne by the cargo owner. However, if the damage to cargo results from the concurrent negligence in navigation of the carrier and of some other ship, that is where two ships are to blame, the owner of the cargo may recover his entire damages from the other ship. The New York, 1899, 175 U.S. 187, 20 S.Ct. 67, 44 L.Ed. 126; The Atlas, 1876, 93 U.S. 302, 23 L. Ed. 863; see The Chattahoochee, 1899, 173 U.S. 540, 549, 19 S.Ct. 491, 43 L.Ed. 801.

■ In addition, each ship has a right of action against the other in admiralty for negligence. In such an action the damages suffered by the two ships are equalized. Each ship is liable for one-half of the total damages: a balance is struck by requiring the ship suffering the least damages to pay to the other ship one-half the difference between the amount of its damages and the amount of the other ship's damages. In striking this balance, the amount paid by the non-carrying vessel to the owners of the cargo aboard the carrier is included as part of the non-carrier's damages. Erie

Railroad Co. v. Erie & Western Transportation Co., 1907, 204 U.S. 220, 27 S.Ct. 246, 51 L.Ed. 450; The Chattahoochee, supra.

The carrier is thus indirectly liable for one-half of the damage suffered by the cargo owners as a result of the negligence of the carrier's servants in the navigation of the ship, despite the immunities of § 3 of the Harter Act and § 4(2) (a) of the Carriage of Goods by Sea Act, supra, but *only* when the carrier is *partly* to blame for the damage. When the carrier is entirely to blame then, with respect to damage to cargo, the carrier, by virtue of the statutory provisions above referred to, need pay nothing at all.

To correct this anomalous result, the Both-to-Blame clause provides, in substance, that in a both-to-blame collision, the owners of the goods will indemnify the carrier against all loss or liability to the other ship, in so far as such loss or liability represents loss of, or damage to, or any claim of the cargo owners, paid to them by the other ship, and set-off, recouped or recovered by the other ship's owners as part of her claim against the carrier. The clause is set forth verbatim in the footnote.[1]

This is the first time that the question of the validity of the contractual provision in its present form has been before the courts. One case, The W. W. Bruce, D.C.E.D.N.Y.1936, 14 F.Supp. 894, sustained the validity of an earlier version of the clause, but was reversed on other grounds, 2d Cir., 1938, 94 F.2d 834.

The parties have stipulated that the collision occurred "by reason of negligence and fault in navigation on the part of both vessels," and without "the act, fault, or neglect of the shipper, consignees, owners or insurers of the cargo." It is also stipulated that the decision as to the two impleaded cargo owners who have appeared will be determinative of the issue as to the other cargo owners.

Finally, it is stipulated that the intervening insurance companies are entitled to recover 100% of the provable damage of their assureds from the Esso Belgium and that the Esso Belgium is entitled to include in its claim against the Nathaniel Bacon the amounts of $15,981.18 and $287.68 for which it is liable to the intervening insurers. The only issue is whether the United States, as owner of the Nathaniel Bacon, is entitled to indemnity from the two impleaded cargo owners. Those two owners deny liability to indemnify on the ground that the provisions of the Both-to-Blame clause are "invalid, illegal, contrary to the statutes of the United States and contrary to public policy, and are therefore void."

The validity of the clause is thus squarely in issue.

Despite the maze of intricate and complicated arguments pro and con, which have covered a wide area and a multiplicity of details too numerous for specific reference, the basic problem is a simple one and in its solution will be found an underlying principle which governs the determination of the host of subordinate questions. Prior to the Harter Act it was settled American law that any agreement absolving the shipowner from liability for negligent navigation or negligence in the management and operation of the vessel was void as

1. If the ship comes into collision with another ship as a result of the negligence of the other ship and any act, neglect or default of the Master, mariner, pilot or the servants of the Carrier in the navigation or in the management of the ship, the owners of the goods carried hereunder will indemnify the Carrier against all loss or liability to the other or noncarrying ship or her owners in so far as such loss or liability represents loss of, or damage to, or any claim whatsoever of the owners of said goods, paid or payable by the other or non-carrying ship or her owners to the owners of said goods and set-off, recouped or recovered by the other or non-carrying ship or her owners as part of their claim against the carrying ship or Carrier.

The foregoing provisions shall also apply where the owners, operators or those in charge of any ship or ships or objects other than, or in addition to, the colliding ships or objects are at fault in respect of a collision or contact.

against public policy. Liverpool & G. W. Steam Co. v. Phenix Insurance Co., 1889, 129 U.S. 397, 9 S.Ct. 469, 32 L.Ed. 788; Railway Co. v. Stevens, 1877, 95 U.S. 655, 24 L.Ed. 535; Railroad Co. v. Pratt, 1874, 22 Wall. 123, 22 L.Ed. 827. This public policy was changed by § 3 of the Harter Act, to the effect that, providing there was "due diligence to make the said vessel in all respects seaworthy and properly manned, equipped, and supplied, neither the vessel, her owner or owners, agent, or charterers, shall become or be held responsible for damage or loss resulting from faults or errors in navigation or in the management of said vessel." While the language of § 4(2) (a) of the later and here controlling Carriage of Goods by Sea Act eliminated the prerequisite of due diligence to make the vessel in all respects seaworthy and substituted language which exonerated the shipowner from responsibility unless it failed to use diligence to make the vessel seaworthy in some respect proximately causing or contributing to the loss, Knauth, The American Law of Ocean Bills of Lading 135 (3d ed. 1947), the change of public policy proclaimed by the Harter Act was continued. As the shipowner was thus relieved of liability to the cargo owner for negligent navigation, and irrespective of whether this be termed an "exemption" or an "immunity," it seems clear to me that there could no longer continue to be any public policy nullifying an agreement absolving the shipowner from liability for negligent navigation. But that is exactly what the Both-to-Blame clause in substance purports to do.

█ The Congress having spoken in such unequivocal manner in § 4(2) (a), on the fundamental question of non-liability of the shipowner generally for negligent operation, it is natural to expect that nothing to be found in the balance of the statutory scheme shall purport to lay down principles inconsistent with § 4(2) (a) and designed to prevent the shipowner from implementing the public policy thus declared wherever, for procedural or other reasons, the policy of the statute is not self executing. Nor can I, after the most careful and painstaking investigation of the entire matter, find any such inconsistency in the portions of the Carriage of Goods by Sea Act urged upon me by the cargo owners, and discussed below. Ingenious as are some of their arguments, I am unable to find that the Both-to-Blame clause offends any provision of the Carriage of Goods by Sea Act or any existing public policy, nor does it seem to me to be in any way unreasonable.

The bills of lading provide that they are drawn pursuant to the provisions of the Carriage of Goods by Sea Act, supra, a stipulation authorized by the statute. Two specific sections thereof are relied on by the cargo owners as invalidating the clause: § 4(3), and § 3(8), 46 U.S.C.A. §§ 1304(3), 1303(8). § 4(3) provides: "The shipper shall not be responsible for loss or damage sustained by the carrier or the ship arising or resulting from any cause without the act, fault, or neglect of the shipper, his agents, or his servants."

It seems clear to me that § 4(3) was never intended to have any application whatever, directly or indirectly, to the general subject of damage to cargo, or to any agreement, such as is contained in the Both-to-Blame clause, indemnifying the carrier against loss or liability representing "loss of, or damage to, or any claim whatsoever of the owners of said goods." A reading of § 4 as a whole confirms this view; and it is axiomatic that the various parts of a statute such as the Carriage of Goods by Sea Act must be read together as parts of a composite whole.

Moreover, it is significant that when the statute was before the Congress, it was proposed that § 4(3) be amended in such fashion as specifically to invalidate the Both-to-Blame clause. See Hearing Before the Committee on Commerce, United States Senate, 74th Cong., 1st. Sess., (1935), pp. 52-59, 61-63; Hearings Before the Committee on Merchant Marine and Fisheries, House of Representatives, 64th Cong., 2d. Sess., (1936) pp. 49-68. That proposal was rejected.

I conclude that reading the statute as a whole and taking into consideration its legislative history, § 4(3) of the Carriage

of Goods by Sea Act does not invalidate the Both-to-Blame clause.

§ 3(8) is also relied upon by the cargo owners. That section reads: "Any clause, covenant, or agreement in a contract of carriage relieving the carrier or the ship from liability for loss or damage to or in connection with the goods, arising from negligence, fault, or failure in the duties and obligations provided in this section, or lessening such liability otherwise than as provided in this Act, shall be null and void and of no effect. A benefit of insurance in favor of the carrier, or similar clause, shall be deemed to be a clause relieving the carrier from liability."

Clearly the first sentence prohibits "contracting out" of liability for negligence only if the negligence is in the performance of the duties and obligations provided in § 3. § 3 imposes no duty or obligation on the carrier in so far as the navigation and management of the ship by its servants is concerned. To the contrary, § 4(2) (a) specifically grants the carrier an immunity from such liability. To construe this section as invalidating "contracting out" of negligence generally would be to disregard the plain meaning of the language, other relevant sections of the statute, its legislative history, see Hearings on S. 1152, Committee on Merchant Marine and Fisheries, House of Representatives, 74th Cong., 2d. Sess., p. 11 (1936), and the construction placed on the statute's predecessor section in the Harter Act, see Calderon v. Atlas Steamship Co., 1898, 170 U.S. 272, 277-278, 18 S.Ct. 588, 42 L.Ed. 1033; The Irrawaddy, 1898, 171 U.S. 187, 190, 18 S.Ct. 831, 43 L.Ed. 130; McNamara & Son v. Hatteras, 1930, 38 L1. L.L.R. 233, 234.

The second sentence of § 3(8), dealing with benefit of insurance, is no more applicable than the first. The legislative background, see Bulletin No. 57, International Maritime Committee, pp. 474-5 (Antwerp, 1923), and the cases illustrating the evil at which the provision was directed indicate that a benefit of insurance clause is invalid only when it requires the cargo owner to insure himself against a loss resulting from the carrier's failure to perform an essential duty of his employment. Phoenix Insurance Co. v. Erie & Western Transportation Co., 1886, 117 U.S. 312, 322, 6 S.Ct. 750, 29 L.Ed. 873; The Hadji, C.C. 1884, 20 F. 875. Since the carrier cannot relieve himself of such liability directly, he cannot do so indirectly by requiring the cargo owner to insure against it.

Similarly, the statute declares that a benefit of insurance shall be deemed to be a clause relieving from liability, but invalidates such clauses only by virtue of the first sentence of § 3(8). I have held above that the Both-to-Blame clause does not run afoul of the rule laid down in that sentence, because it does not deal with the duties and obligations of the carrier provided in § 3 of the Act.

It follows that neither § 4(3) nor § 3 (8) invalidates the contractual provision being considered.

That provision is also attacked on the ground that it relieves the carrier from liability for negligence, and is, therefore, void and contrary to public policy, Liverpool Steam Co. v. Phenix Insurance Co., supra; Railway Co. v. Stevens, supra; Railroad Co. v. Pratt, supra, notwithstanding the provisions of the Harter and Carriage of Goods by Sea Acts. This argument must be rejected.

Section 3 of the Harter Act effected a change in the policy of the law. See The Jason, 1912, 225 U.S. 32, 53, 55, 32 S.Ct. 560, 56 L.Ed. 969; The Irrawaddy, supra, 171 U.S. at page 193. Contractual provisions which would formerly have been invalid because inconsistent with the duty of care in the navigation of the vessel owed by the carrier to the cargo owner were no longer so, since the Harter Act absolved the carrier from liability to the cargo owner for negligent navigation. The Jason, supra.

The Both-to-Blame clause is applicable only when negligent navigation has caused damage to cargo, and operates to relieve the carrier from indirect liability to the cargo owner for such damage. As in The Jason, supra, this is consistent with the policy declared by § 3 of the Harter Act, and § 4(2) (a) of the Carriage of Goods by Sea Act. The statutes deprive the cargo

owner of any right of action against the carrier for negligent navigation by the carrier's servants, and where there is no enforceable right, it cannot be said that there is any duty. The clause therefore is not inconsistent with the shipowner's duty of care in navigation. The Jason also is ample authority for the proposition that no explicit statutory authorization for a given contractual provision need be found. It is sufficient that the contractual provision is consistent with public policy as declared in the statutes and cases, and is otherwise reasonable.

I know of no other public policy with which the clause is inconsistent. The benefit of insurance cases are inapplicable, since, as pointed out in discussing § 3(8) of the Carriage of Goods by Sea Act, such clauses are invalid only when the clause indirectly relieves the carrier of an essential duty owed to the cargo owner. No such duty is here involved. The Ansaldo San Giorgio v. Rheinstrom Bros. Co., 1935, 294 U.S. 494, 55 S.Ct. 483, 79 L.Ed. 1016, is inapposite, since it dealt with the duty of care in the stowage of the goods. Neither statute relieves the carrier of liability for negligence in the performance of this duty. Cf. § 3(2) of Carriage of Goods by Sea Act, supra.

Neither the Chattahoochee, supra, nor Erie Railroad Co. v. Erie & Western Transportation Co., supra, announce any public policy with which the Both-to-Blame clause conflicts. They hold that § 3 of the Harter Act did not purport to affect the rights of the carrier as against another ship when both had been negligent and a collision between them occurred. The non-carrying ship was still entitled, in a division of damages, to reimbursement by set-off or recoupment of one-half of what it had paid to the owners of cargo aboard the carrier. This rule remains unaffected by the workings of the Both-to-Blame clause, and the burdens resulting from the collision of two negligently navigated ships will continue to be allocated as in the past. The fact that the carrier recovers part of what it loses in the division of damages from some other source does not subvert the principles implicit in the rule of these two cases.

Concededly, the Both-to-Blame clause produces a result which is inconsistent with that reached by the application of the Atlas rule, as in Aktieselskabet Cuzco v. Sucarseco, 1935, 294 U.S. 394, 55 S.Ct. 467, 79 L.Ed. 942. That case held that the cargo owner, in asserting his claim against the non-carrying ship, may recover the amount for which he is liable to the carrier as a contributor to general average. But neither in that case, nor in the cases where the Atlas rule was earlier propounded and developed, was there any contractual provision involved which would alter the result effected by the application of the Atlas rule. There is nothing in these cases which requires me to invalidate such a contractual provision as is before me, provided the provision is otherwise "just and reasonable." Express Co. v. Caldwell, 1874, 21 Wall. 264, 266-268, 22 L.Ed. 556; Liverpool Steam Co. v. Phenix Insurance Co., supra, 129 U.S. at page 441-442, 9 S.Ct. 469; Railroad Co., v. Pratt, supra, 22 Wall. at page 134.

■ The only remaining question, therefore, is whether it is just and reasonable for the carrier, by contract, to deprive the cargo owner of 50% of the amount which he receives from the non-carrying ship for the damage caused to cargo, and thus to increase the cargo owner's insurance costs. Cf. Luckenbach v. McCahan Sugar Co., 1918, 248 U.S. 139, 148-149, 39 S.Ct. 53, 63 L.Ed. 170, 1 A.L.R. 1522. I conclude that it is.

Two rules of law are affected by the operation of the Both-to-Blame clause, and its reasonableness must be appraised in the light of both.

First, it affects the carrier's liability to the cargo owner for damage caused to cargo due to negligent navigation. Cf. The Cockatoo, 2 Cir., 1932, 61 F.2d 889, certiorari denied 1932, 287 U.S. 669, 53 S.Ct. 292, 77 L.Ed. 576. In so far as the clause relieves the carrier of this liability it is an implementation of the statutes heretofore discussed. The reasonableness of the clause necessarily follows in so far as it has this effect for it is not for this Court to find unreasonable a policy which

has commended itself to the Congress, and has become the law of the land. The Irrawaddy, supra, 171 U.S. at page 193, 18 S.Ct. 831, 43 L.Ed. 130; U. S. v. Trans-Missouri Freight Association, 1897, 166 U.S. 290, 340, 17 S.Ct. 540, 41 L.Ed. 1007.

Secondly, the Both-to-Blame clause deprives the cargo owner of a portion of the proceeds resulting from the enforcement of his right to recover his entire damages from one of two joint tort-feasors. In so far as the clause has this effect it is a reasonable recognition of the realities flowing from the admiralty division of damages rule and the policy found in the statutes discussed above. By virtue of the division of damages rule, the non-carrier is in fact responsible for only 50% of the damage to cargo. The clause thus results in a recovery by the cargo owner of the full amount which the law has ruled the non-carrying ship should ultimately be liable to pay, while depriving the cargo owner of a recovery for damage to cargo for which the carrier would be responsible as part of equalized collision damage, but the risk of which the statute declares should be borne by the cargo owner himself.

Admittedly, this result does some violence to the theory that each joint tort-feasor should be liable for the entire damage caused, cf. Restatement, Torts, § 439, but this theory gives scant recognition to the realities of the situation under the division of damages rule. The Both-to-Blame clause does recognize these realities, and I can see no basis for holding that such recognition is unreasonable.

I do not mean to be understood as saying that the rule of the Atlas is unreasonable, and should be rejected, nor do I reject its applicability in the absence of the situation presented to me in this case. I merely hold that the contractual device the parties have adopted is not unreasonable. In this conclusion, I am in accord with the only other judge who has passed upon the issues, see The W. W. Bruce, supra.

In addition, and as further indicating the reasonableness of the clause, it results in a greater certainty in the allocation of the risks incidental to ocean navigation. It also corrects the anomalous result of the operation of the Chattahoochee and Atlas rules which led shipowners "to adopt extraordinary precautions to avoid being sued in the United States and has also given rise to some remarkable efforts to gain the advantage of the American rule". Knauth, Ocean Bills of Lading, 176 (3d ed. 1947), see 176-7 for illustration.

Finally, the statutes express a legislative policy that carriers should not and that cargo owners should bear the risk of damage to cargo due to the carrier's negligent navigation by its servants. I do not see how I can invalidate the contractual provision by asserting a directly contrary policy to be controlling.

I hold that the Both-to-Blame clause is reasonable, and not inconsistent with public policy, and therefore valid.

Decree in accordance with opinion.