NICARAGUAN LONG LEAF PINE LUMBER CO., Inc.,

v.

MOODY.

THE WILLIAM G. OSMENT.

No. 14587.

United States Court of Appeals Fifth Circuit.

March 31, 1954.

Douglas D. Batchelor, David W. Dyer, and Smathers, Thompson, Maxwell & Dyer, all of Miami, Fla., for appellant.

Walter Humkey and Fowler, White, Gillen, Yancey & Humkey, all of Miami, Fla., for appellee.

Before STRUM and RIVES, Circuit Judges, and DAWKINS, District Judge.

RIVES, Circuit Judge.

This was a libel in admiralty now based solely upon the law of general average. The first count alleging negligence on the part of the vessel was dismissed by the district court and no appeal is taken from that decision. The second count sought a general average contribution from the vessel for the jettison of the deck cargo. The district court held that since the libelant had failed to prove negligence, it was precluded from any recovery by the provision of the bills of lading, "All lumber loaded on deck at Shipper's risk."[1]

---

1. The district court's findings of fact and conclusions of law were as follows:

"Findings of Fact

"1. The Court has jurisdiction of the parties and subject matter.

"2. On or about June 28, 1951, the Libelant caused to be delivered to the M/V William G. Osment at Puerto Cabejas, Nicarague, 148,845 board feet of lumber, to be transported to Curacao, Netherlands West Indies.

"3. Of the above lumber 134,313 board feet were stored below deck and 14,532 board feet were stored on deck.

"4. Two bills of lading were issued covering such lumber and each of them contained the following provision, 'all lumber loaded on deck at shipper's risk'.

"5. On or about June 30, 1951, in order to protect the ship and other cargo from total loss, the Master of the M/V William G. Osment jettisoned all of the deck cargo.

█ The basis of the law of general average is well stated in one of the leading American cases on the subject:

"The law of general average, coming down to us from remote antiquity, is derived from the law of Rhodes, through the law of Rome, and is part of the maritime law, or law of the sea, as distinguished from the municipal law, or law of the land.

"The typical case is that mentioned in the Rhodian law preserved in the Pandects of Justinian, by which, if a jettison of goods is made in order to lighten a ship, what is given for the benefit of all is to be made good by the contribution of all. 'Cavetur ut, si levandae navis gratia jactus mercium factus est, omnium contributione sarciatur, quod pro omnibus datum est.' Dig. 14, 2, 1, 1." Ralli v. Troop, 157 U.S. 386, 393, 15 S.Ct. 657, 660, 39 L.Ed. 742.

█ Mr. Chief Justice Hughes described the essential conditions of general average as follows:

"It means that there was a common imminent peril and a voluntary sacrifice or extraordinary expenses necessarily made or incurred to avert the peril and with a resulting common benefit to the adventure. * * * It means that the sacrifice or expenses fell upon the whole adventure and were to be assessed in proportion to the share of each in that adventure." Aktieselskabet. Cuzco v. The Sucarseco, 294 U.S. 394, 401, 55 S.Ct. 467, 470, 79 L. Ed. 942.

More specifically pertinent to the facts of this case are the following two paragraphs from Ralli v. Troop, supra, 157

U.S. at pages 395, 396, 15 S.Ct. at page 661:

"In Wright v. Marwood, in which it was held by the English court of appeal that a jettison, by the master, of cattle carried on deck, though proper and necessary for the safety of the ship, did not give a right to general average, Lord Justice Bramwell said: 'It is not necessary to say what is the origin or principle of the rule; but, to judge from the way it is claimed in England, it would seem to arise from an implied contract inter se to contribute "by those interested."' The judgment, however, was put upon the ground that, whether the rule was treated as arising from implied contract, or as a matter of positive law, it was subject to an exception in the case of goods loaded on deck, unless a deck cargo was customary. 7 Q.B.D. 62, 67.

"In Burton v. English, in the same court, in which the charter party stipulated that the ship should be 'provided with a deck load if required, at full freight, but at merchant's risk,' and the last words were held not to exclude the right to a general average contribution for a necessary jettison of timber carried on deck, Lord Justice Brett (since Lord Esher, Master of the Rolls), in answering the question, 'By what law does the right arise to general average contribution?' said: 'I do not think that it forms any part of the contract to carry; and that it does not arise from any contract at all, but from the old Rhodian laws, and has become incorporated into the law of England as the law of the ocean. It is not as a matter of contract, but in con-

"6. The vessel, its owner, master or crew were not guilty of negligence resulting in or in performing the jettisoning of the deck cargo.
"Conclusions of Law
"1. Under the provisions of the bills of lading the M/V William G. Osment would only be liable in an action for gen-

eral average if the vessel, its owner, master or crew were guilty of negligence resulting in, or in performing the jettisoning of the deck cargo.
"2. The second cause of action of the libel herein should be dismissed.
"3. Respondent should recover its costs herein."

sequence of a common danger, where natural justice requires that all should contribute to indemnify for the loss of property which is sacrificed by one in order that the whole adventure may be saved. If this be so, the liability to contribute does not arise out of any contract at all, and is not covered by the stipulation in the charter party on which the defendants rely.' 12 Q.B.Div. 218, 220, 221."·

It is now well settled that the shipowner's obligation to contribute to general average sacrifices of the cargo is not affected by exceptions in the contract of carriage unless so stipulated in express terms.[2] Indeed the respondent concedes in brief "that the District Court erred in its conclusion with reference to general average when it held that the libelant was bound to prove negligence," but insists that the judgment should be affirmed for other reasons.

The respondent contends, first, that the law of general average at the port of destination controls, citing Charter Shipping Co., Ltd. v. Bowring, Jones & Tidy, Ltd.; 281 U.S. 515, 518, 50 S. Ct. 400, 74 L.Ed. 1008 and that there was no proof as to what that law was at the port of Curacao, N. W. I. What was said by this Court in The Mount Everest, 17 F.2d 478, 479, is a sufficient reply, "The record does not indicate that it was suggested in the trial court that the case involved any question of foreign law." See also, The Lydia, 2 Cir., 1 F.2d 18, 23; cf. Olivari v. Thames & Mersey Marine Ins. Co., D.C.E.D.N.Y., 37 F. 894, 896.

The respondent next contends that the district court erred in finding that there was a voluntary sacrifice of the deck cargo to protect the vessel and other cargo from loss. The respondent introduced in evidence the sworn protest signed by his master upon the vessel's arrival in Curacao. This protest states, in part: "I considered it necessary to jettison the full-deck cargo in order to protect the ship and other cargo from total loss." Actually this was not an issue in the case. Paragraph 8 of the libel states, in part: " * * * In order to protect the ship and other cargo from total loss, the master of the respondent vessel jettisoned all of the aforementioned deck cargo." Paragraph 5 of the sworn answer states: "The claimant admits the allegations contained in the eighth paragraph."

The respondent's third argument is that deck cargo is not entitled to contribution in general average unless it is a custom of the trade to carry such cargo on deck as ruled in the old English case of Wright v. Marwood, 7 Q.B.D. 62, 67, referred to in Ralli v. Troop, supra. While the libelant recognizes that principle, it points out that it proved such a custom in the deposition of Mr. Robinson,[3] and that no contrary testimony was offered. The respondent asks that we consider as on a trial de novo the deposition of C. B. Moody, taken by the libelant, but not introduced during the trial, to establish that the carrying of a deck cargo was contrary to custom at the time of the year involved in the area in question. If presented on the trial, that evidence would have created a conflict which might or might not have been resolved by still further testimony. The testimony not having been offered on the trial, and no sufficient excuse being shown for

2. The Santa Ana, 9 Cir., 154 F. 800, 802; Dibrell Bros., Inc. v. Prince Line, 2 Cir., 58 F.2d 959, 961; The Lewis H. Goward, ·D.C.S.D.N.Y., 34 F.2d 791, 793; Swift & Co. v. Glasgow Steam Shipping Co., D.C. S.D.N.Y., 280 F. 910, 913.

3. "Q. Are you generally familiar with the lumber trade moving out of Puerto Cabezas? A. Yes, I am familiar with it. "Q. Does the lumber generally move out of Puerto Cabezas on small vessels similar in type to the William G. Osment? A. Part of it, yes. "Q. Is it customary to load deck cargo on these vessels? A. On practically every vessel that was in there, when I was present in Puerto Cabezas, deck cargo was loaded. "Q. Was that true even in summer months? A. In all months."

such failure, we do not think that it should be considered on appeal. The Juniata, 91 U.S. 366, 23 L.Ed. 208; The Mabey, 10 Wall. 419, 77 U.S. 419, 19 L.Ed. 963; The Beeche Dene, 5 Cir., 55 F. 526; Annotation 103 A.L.R. 788.

The undisputed values with respect to general average contribution are:

| | |
|---|---|
| Hull ............ | $100,000.00 |
| Freight ......... | 3,721.12 |
| Cargo ........... | 19,965.36 |
| Total ....... | $123,686.48 |

The value of the jettisoned cargo was $2,091.00. The libelant is therefore entitled to a general average contribution from the respondent of nearly 81%, or to be accurate $1,691.62, representing the contribution due from the hull. A decree will be entered in favor of the libelant for $1,691.62 together with interest and costs.

Reversed and rendered.