Aeon Steuer, J.
This motion seeks to strike ont several denials in the answer as sham and also 8 of the 13 defenses. In the view taken decision on the ninth defense which pleads the Statute of Limitations is determinative of this matter, although it must be admitted that study of the contention of the parties in regard to the other defenses largely contributed to the decision arrived at.
The action is the outgrowth of a fire which occurred on the S. S. Eureka on March 8, 1945. The vessel owned by the plaintiff and at the time laden with cargo addressed to various consignees was undergoing certain repairs by Technical Marine Maintenance Co. It is claimed that the negligence of this company caused the fire. The defendant, a “ department ” of certain marine underwriters (the nature of its legal "entity is in some doubt), made an agreement with the attorneys for the plaintiff who also represented the interests of the cargo owners to pay 85% of all provable damage, subject to certain limitations of amount and character. There is some question of the date of this agreement but the date claimed by the plaintiff, January 2, 1946, will be assumed to be correct. Two days later, pursuant to that agreement defendant paid to plaintiff $83,960.21. Plaintiff claimed that the payment did not include $8,320 which was 85% of $9,788.23 which it paid to a cargo surveyor. Questions arose on this item and plaintiff started suit for it on July 7, 1950.
On January 7, 1957 plaintiff moved for and obtained permission to serve an amended complaint. In this complaint, for the first time, plaintiff appeared in the title as “ suing on behalf of itself and all other participants in General Average, similarly situated.” The complaint alleges that expenses were incurred by it “ as agent for the venture, said expenses being a charge upon the venture in General Average.” It then alleges that these expenses amounting to $110,822.29 will be subject to contribution. It then alleges that the sum sued for in the original complaint is an item of this expense which has already been paid by it as such agent.
General average is a term used in admiralty law and definition of it can best be had from the writings of courts which administer that law directly and habitually. Coming from a court which deals with the subject only indirectly and occasionally an exposition would not be definitive but some is necessary to state the premises on which the ultimate conclusions are *883 based. When a disaster occurs to a vessel necessitating a sacrifice to a part of the cargo or the gear of the vessel, or both, the damage is shared proportionally by the owners of the vessel and the cargo (Star of Hope, 9 Wall. [U. S.] 203). The mechanics of arriving at the proportion to be borne by the respective parties and of payment have undergone development and change as the arts of communication have rendered such change applicable, but the principles are unchanged. The amount of contribution is determined before discharge of the cargo and each owner’s share is a lien against his consignment. If a third party is responsible for the disaster, each sufferer may claim against him for his damage which may include what he has been obligated to pay because of his general average obligation (Aktieselskabet Cuzco v. The Sucaresco, 294 U. S. 394). Naturally general average is not a device to make a tortfeasor pay for the damage he has done several times over and if he pays for the damage done he cannot be affected by how the recipients have had the damage apportioned between them by general average (Morrison Steamship Co. v. Greystoke Castle [1947], L. J. R. 297).
It is not easy to determine in what capacity plaintiff is now suing. No matter what theory is advanced there is some statement in the very voluminous papers that have been submitted which will enable plaintiff to escape its consequences by denying the premise. For instance, plaintiff asserts that despite the title and the allegations referred to above, no contribution has been made by anyone and plaintiff is merely suing for the damage done it by the tort-feasor. This claim is clearly not tenable. It alleges that the expenses were not incurred in its capacity as owner but as “ agent for the venture.” To support this it amended the title to the form now employed. Originally it claimed for an item of expense that it was put to by virtue of the fire. Now it claims for the same item and others as an agent to collect for a class.
This is more than a mere matter of form of the allegations. Plaintiff does not allege that the items sued for are expenses which it has paid or is liable for. They are, apparently, owed by “ the venture ”, that is, the ship owner and the cargo owners jointly.
This is a new and distinct cause of action from that originally alleged. By familiar rules the assertion of this claim dates from the pleading and not from the commencement of the action. The question is therefore when this cause of action arose.
Plaintiff claims that it arose upon determination of the general average adjustment and its publication in the general *884 average statement on December 30, 1955. This involves a misconception of both fact and of law. The adjustment merely purports to determine the share of the burden to be allocated to each party. "Where as here the entire burden is sued for the allocation can have no effect on the right. But, claims plaintiff, it made no demand until then. But the statute starts to run as of the date when a demand could have been made (Civ. Prac. Act, § 15). A demand, obviously, can be made when the right to payment accrues. Suit against the tort-feasor could have been begun on completion of the voyage. And as against him the fact that the general average adjustment had not been made would not extend that time, nor would the fact that the damages were still not liquidated. (United States v. Atlantic Mut. Ins. Co., 298 U. S. 483.) Against this defendant demand could have been made upon its assumption of liability, namely January 2, 1946. Suit was therefore barred January 2, 1952, over five years before this claim was asserted.
It follows not only that the defense of limitations is valid, on this pleading it is insurmountable and defendant is entitled to a dismissal. However plaintiff could certainly plead his original claim and possibly others. Hence leave to serve an amended complaint on or before April 26, 1957 is granted. .