**EAGLE TERMINAL TANKERS, INC., Plaintiff,**

v.

**INSURANCE COMPANY OF U.S.S.R., (INGOSSTRAKH), LTD., Defendant.**

No. 78 Civ. 2338.

United States District Court, S. D. New York.

May 14, 1980.

Dougherty, Ryan, Mahoney, Pellegrino, Giuffra & Zambito, New York City, for plaintiff; Lawrence J. Mahoney, New York City, of counsel.

Waesche, Sheinbaum & O'Regan, New York City, for defendant; Donald M. Waesche, Francis M. O'Regan, Richard W. Stone, II, New York City, of counsel.

## MEMORANDUM AND ORDER

WHITMAN KNAPP, District Judge.

This is a maritime action to recover General Average contribution in the amount of $126,951.61 from the underwriter of cargo interests ("the underwriter") for necessary expenses incurred by plaintiff Eagle Terminal Tankers, Inc. as owner of the S.S. Eagle Courier "for the safety and preservation of the ship and cargo and for the furtherance and completion of the venture" in the course of a trans-Atlantic voyage by said vessel from the United States to the Soviet Union. In addition, plaintiff asks to be awarded interest on the above sum from an unspecified date, costs, and reasonable attorneys fees. Before us is a motion for summary judgment brought by the underwriter pursuant to Rule 56 of the Federal Rules of Civil Procedure. Specifically, the underwriter contends that plaintiff is not entitled to any contribution in General Average from cargo interests on the ground that "neither the vessel nor the cargo were in any peril . . . when the expenditures which gave rise to this alleged general average were incurred." We find the underwriter's position to be well-founded, and consequently grant its motion for summary judgment.

Based on the complaint, on the underwriter's statement made pursuant to Rule 9(g) of the General Rules of the United States District Courts for the Southern and Eastern Districts of New York, and on the Statement of General and Particular Average of December 15, 1976 concerning the voyage in question prepared by Alexander & Alexander, Inc., the average adjustor, the facts underlying this action appear to be as follows: Plaintiff and V/O Exportkhleb, Moscow, entered into a voyage charter party dated November 14, 1975 under the terms of which plaintiff undertook to transport a cargo of grain on board the Eagle Courier from the United States to the Soviet Union. Clause 2 of the charter party provided that "General Average shall be payable according to the York/Antwerp Rules of 1950 and to be settled in New York." The charter party also contained

the standard so-called new-style Jason clause[1] which provided:

"In the event of accident, danger, damage or disaster before or after commencement of the voyage resulting from any cause whatsoever, whether due to negligence or not, for which, or for the consequences of which, the Carrier is not responsible by statute, contract or otherwise, the goods, shippers, consignees or owners of the goods shall contribute with the Carrier in general average to the payment of any sacrifices, losses or expenses of a general average nature that may be made or incurred, and shall pay salvage and special charges incurred in respect of the goods."

Subsequently, a cargo of approximately 25,832 metric tons of wheat was loaded onto the Eagle Courier, and on December 30 it left Port Arthur, Texas, for Leningrad, intending to stop at Rotterdam to refuel. On January 13 and 14, as the vessel was approaching Rotterdam, one of the engineering officers felt a bump, and metallic noises were heard from the stern. When the ship was moored at Rotterdam, an examination revealed that its propeller had been severely damaged. In order to make the necessary repairs, part of the cargo had to be discharged, and the vessel was drydocked. After the repairs, which were permanent in nature, had been completed, the discharged wheat was reloaded, and on January 31 the Eagle Courier resumed its voyage to Leningrad where it arrived on February 6.

In order to obtain release of the cargo, the underwriter on January 28 issued an average guarantee in which it "agree[d] to pay to the Shipowners any Contribution to General Average and/or Salvage and/or Charges which may hereafter be ascertained to be due" with respect to the cargo of wheat in question. Thereafter, the average adjustor in New York prepared a Statement of General and Particular Average which set forth the amounts due re-

spectively from the vessel and the cargo interests. The underwriter, however, has refused to pay the General Average contribution thus assessed against it, which plaintiff seeks to collect in the instant action.

■ This case revolves around what Judge Wisdom has aptly termed "the esoteric world" of General Average. *Orient Mid-East Lines, Inc. v. A Shipment of Rice, etc.* (5th Cir. 1974) 496 F.2d 1032, 1034. Specifically, the maritime doctrine of General Average "derives from the Rhodian maxim 'that if merchandise is thrown overboard to lighten the ship, the loss occasioned for the benefit of all must be made good by the contribution of all.'" *Cia. Atlantica Pacifica, S.A. v. Humble Oil & Refining Company* (D.Md.1967) 274 F.Supp. 884, 891, quoting 2 THE DIGEST OF JUSTINIAN 385 (Monro transl. 1909, Digest 14.2.1). As it has evolved under maritime law, this doctrine "provides that where a portion of ship or cargo is sacrificed to save the residue from peril of shipwreck, each owner of property saved contributes in proportion to the value of that property to make up the loss of those whose property has been sacrificed for the common benefit." *United States v. Atlantic Mutual Insurance Co.* (1951) 343 U.S. 236, 246 n. 5, 72 S.Ct. 666, 671 n. 5, 96 L.Ed. 907 (Frankfurter, J., dissenting). "Today the principle covers a wide range of maritime losses, from damage done in quenching a shipboard fire to expenditures incurred in a port of refuge." *Orient Mid-East Lines, supra,* 496 F.2d at 1035.

■ In an attempt to achieve international uniformity with regard to General Average, a Conference of the Association for the Reform and Codification of the Law of Nations held at Liverpool and attended by representatives of the shipping world adopted the York/Antwerp Rules of 1890. These Rules, which were amended and supplemented in 1924, 1950 and 1974,[2] consti-

---

1. In *The Jason* (1912) 225 U.S. 32, 32 S.Ct. 560, 56 L.Ed. 969 the Supreme Court held this type of clause to be valid.

2. The York/Antwerp Rules of 1950 can be found in 6 Benedict on Admiralty 346–54 (7th ed. 1969). The 1974 version is at 2 Benedict on Admiralty 13–1 to 13–12 (7th ed. 1975).

tute the modern codification of the doctrine and are generally incorporated in charter parties and/or bills of lading. While they do not have the force of law, their inclusion by reference in a charter party, as in the case at bar, makes them contractually binding on the parties. G. Gilmore and C. Black, THE LAW OF ADMIRALTY 252–53 (2d ed. 1975); *Sea-Land Service, Inc. v. Aetna Insurance Company* (2d Cir. 1976) 545 F.2d 1313, 1315 n. *.

Rule A of the York/Antwerp Rules of 1950 provides:

"There is a general average act when, *and only when*, any extraordinary sacrifice or expenditure is intentionally and reasonably made or incurred for the common safety *for the purpose of preserving from peril* the property involved in a common maritime adventure." (Emphasis supplied)

It is clear that "General average concepts apply only to action taken for the common safety when the ship and its cargo are in peril." *Orient Mid-East Lines, supra,* 496 F.2d at 1038. In the words of Chief Justice Hughes, one of the "essential conditions" for General Average to be applicable is that there must have been "a common imminent peril and a voluntary sacrifice or extraordinary expenses necessarily made or incurred to avert the peril . . . ." *Aktieselskabet Cuzco v. The Sucarseco* (1935) 294 U.S. 394, 401, 55 S.Ct. 467, 470, 79 L.Ed. 942.

In the case before us, there was no peril. The damage to the propeller was discovered while the Eagle Courier was safely moored at a scheduled port of call. At that time, the vessel was certainly in no danger whatsoever. It is irrelevant whether it could have continued on to Leningrad without the repairs being made. The vessel could have remained moored indefinitely at Rotterdam without incurring the slightest peril to itself or its cargo. Consequently, we find that no General Average situation existed, and that plaintiff is not entitled to any General Average contribution from the underwriter.

While a situation exactly like the one at bar has not to our knowledge arisen in this Circuit, we believe that the decision in *Orient Mid-East Lines, supra,* provides persuasive guidance. In that case, the Court of Appeals for the Fifth Circuit affirmed a district court finding that a vessel which had been intentionally grounded on the bottom of a river to permit repair work was not in a position of peril, and that therefore "the damage and loss complained of does not in any way warrant general average contribution." 496 F.2d at 1038.

Plaintiff's reliance on *Navigazione Generale Italiana v. Spencer Kellogg & Sons* (2d Cir. 1937) 92 F.2d 41 is misplaced. In that case, Judge Augustus Hand observed that while the "imminency" of the peril is not the critical test in determining whether a General Average act has occurred, there nevertheless "must be fair reason to regard a vessel in peril in order to require contribution in general average." *Id.* at 43. In that case, the vessel in question was stranded on the bottom of a river in a position in which the seams of its plating would have opened in the event of a hurricane or even of an increase in the wind's velocity. Consequently, although peril to the vessel was not *imminent* in the sense that a hurricane was approaching or that the wind's velocity was about to increase, such peril would nonetheless have been ultimately inevitable but for the "intentional extraordinary" measures at issue which were undertaken to move the vessel into deeper waters. Here—on the contrary and as we have seen—the Eagle Courier could forever have remained at its Rotterdam mooring without being subject to any dangers except those incident to old age.

Defendant's motion for summary judgment is accordingly granted.

SO ORDERED.